## 68038. JONES v. TINGUE, BROWN & COMPANY.

CARLEY, Judge.

Appellee-defendant manufactures and sells products for use in institutional and commercial laundries. Its products include pads and covers for ironing machines. The Medical Center in Columbus is a long-standing customer of appellee's and Mr. William Roundtree is appellee's employee in charge of the hospital account. The Medical Center placed an order with appellee for new pads and covers to be fitted on its ironing machines. The replacement of the pads and covers on the ironing machines owned by the Medical Center was a job which generally required two people. However, it was appellee's practice to send only one of its own employees on such jobs and to rely upon the customer to provide the necessary additional manpower. Accordingly, Mr. Roundtree arrived unaccompanied at the Medical Center with the new pads and covers.

Appellant-plaintiff was a newly hired employee of the Medical Center's laundry facility. His supervisor was Mr. Gene Winchester. According to Mr. Winchester's affidavit, it "was part and parcel of [appellant's] normal duties" to become familiar with the equipment in the Medical Center's laundry facility. To that end, Mr. Winchester assigned appellant the task of assisting Mr. Roundtree in replacing the pads and covers on the ironing machines. Appellant, having been "assigned to stay and learn about the machine" by his supervisor, remained in the laundry facility after his normal working hours. By the time that appellant and Mr. Roundtree began replacing the pads and covers on the ironing machines, everyone else, including Mr. Winchester, had gone for the day. The replacement process was undertaken even though Mr. Roundtree was apparently aware that the ironing machine was still hot because it had been in full operation less than 30 minutes before. According to Mr. Roundtree, he "usually ask[ed] for [clients] to turn [the heat] off at least 30 minutes before they get through with the ironer, because in doing that the damp linen going through it will help draw some of the heat out of the ironer to cool it down a little bit."

At some point during the replacement process, Mr. Roundtree determined that it would be necessary to "jog the rolls" of the machine. To accomplish this, appellant was left at "the end of the ironer" while Mr. Roundtree went to the controls in order to start the machine. From the controls, Mr. Roundtree was able to see a portion of appellant's body but was unable to see appellant's hands. Mr. Roundtree was under the apparent impression that he "could tell [where appellant's hands were located] from the position of his body . . . ." Mr. Roundtree does not recall anything that he may have said to warn appellant before "jogging" the machine. When Mr. Roundtree

started the ironer, appellant's hand was pulled into the hot machine and severely injured.

Appellant received workers' compensation from the Medical Center. He then instituted the instant tort action, alleging that his injury had resulted from Mr. Roundtree's negligence and that appellee was liable under the theory of respondeat superior. Appellee answered and, among its other defenses, asserted that appellant had been acting as its employee at the time he was injured and that he was therefore barred from recovery under the "borrowed servant" rule. See generally *Six Flags Over Ga. v. Hill*, 247 Ga. 375 (276 SE2d 572) (1981). After initial discovery, appellee moved for summary judgment based upon its "borrowed servant" defense. The trial court granted appellee's motion and appellant appeals.

1. "[I]n order for an employee to be a borrowed employee, the evidence must show that '(1) the special master had complete control and direction of the servant for the occasion; (2) the general master had no such control, and (3) the special master had the exclusive right to discharge the servant.' [Cit.] Thus these tests must be applied to the facts in this case." *Six Flags Over Ga. v. Hill,* supra at 377.

There appears to be no doubt that, as a newly hired laundry worker who had been ordered by his supervisor to give assistance to Mr. Roundtree, appellant was under the "direction" of Mr. Roundtree at the time of the incident. However, the "borrowed servant" doctrine contemplates that, in addition to direction, the special master will have "control" over the servant to the exclusion of the general master. There is a distinction between the act of merely following directions while giving assistance to another's servant and the status of being within the "complete control" of another's servant. The former connotes cooperation with another's servant, not the subordination which is implicit in the notion of "complete control." Cf. *Pilcher v. Wise Electric Co.*, 129 Ga. App. 92 (198 SE2d 713) (1973).

Mr. Roundtree's affidavit does state that he "controlled what tasks [appellant] performed. If [appellant's] performance had been inadequate, [Mr. Roundtree] would have assigned him to another task, or discharged him from assisting . . . with the installation of the pads and covers." However, these assertions in Mr. Roundtree's affidavit are controverted.

In opposition to appellee's motion for summary judgment, appellant submitted the affidavit of Mr. Winchester. Mr. Winchester's affidavit clearly demonstrates that the underlying purpose of his "insistence" that appellant assist Mr. Roundtree was *not* to assign appellant a task totally outside his duties as a laundry employee nor to relinquish "complete control" over appellant to Mr. Roundtree. Compare *Jarrard v. Doyle*, 164 Ga. App. 339 (297 SE2d 301) (1982)

(painter assigned to assist plumber). Mr. Winchester's affidavit states unequivocally that he considered the task of assisting Mr. Roundtree to be "part and parcel" of appellant's "normal duties" as a laundry employee so as to familiarize himself with the equipment and "learn all phases of the laundry room . . . ." Mr. Winchester further states that Mr. Roundtree "had no right or authority to switch [appellant's] job assignment or replace him with another employee . . . . As [appellant's] immediate supervisor, [Mr. Winchester] had the continuing right to control and direct [appellant's] activities even after [Mr. Winchester] left the hospital laundry for home. To be sure, if [appellant] had any questions about Mr. Roundtree's instructions, he was to telephone [Mr. Winchester]."

Thus, rather than the relinquishment of "complete control" over appellant to Mr. Roundtree for the latter's own exclusive purposes, Mr. Winchester asserts his retention of control during the course of appellant's performance of "normal" duties as a laundry employee. While appellee may have derived a benefit from having appellant assist its servant, if appellant was not in the exclusive direction *and* control of Mr. Roundtree, appellant was not appellee's "borrowed servant."

2. Even assuming that Mr. Winchester's assertion that he retained "control" over appellant's "normal" laundry duties were to be discounted as a matter of law solely on the basis that Mr. Winchester was not physically present at the time of the incident, a genuine issue of material fact would yet remain with regard to appellee's "exclusive" right to discharge appellant. Construing the evidence most strongly for appellant, Mr. Winchester's affidavit establishes that it was *his* exclusive right to determine whether appellant would or would not serve as Mr. Roundtree's assistant. The affidavit clearly states that Mr. Winchester ordered appellant to perform this "normal" laundry duty and that Mr. Roundtree was without right or authority "to switch" appellant's job assignment or to "replace him" with another of Mr. Winchester's employees. Thus, as against Mr. Roundtree's assertion that he "would have" discharged appellant, Mr. Winchester asserts that he alone had the right to determine which of his employees would assist in replacing the pads and covers on the Medical Center's ironing machines and that, having made that determination, no one else had the authority to countermand it. Thus, even assuming that Mr. Roundtree "would have" discharged appellant, there is nothing to show that such discharge would have been authorized or that Mr. Winchester consequently could not have insisted that appellant be the one to assist Mr. Roundtree in the performance of this "normal" laundry duty. If so, it can hardly be said that appellee had the "exclusive" right to discharge appellant.

Genuine issues of material fact remain regarding appellant's sta-

tus as appellee's "borrowed servant." The trial court erred in granting appellee's motion for summary judgment. *Freeman v. Pumpco, Inc.*, 167 Ga. App. 312 (306 SE2d 385) (1983).

*Judgment reversed. Quillian, P. J., and Birdsong, J., concur.*

DECIDED JUNE 28, 1984 —
REHEARING DENIED JULY 12, 1984.

Paul D. Hermann, Paul V. Kilpatrick, Jr., C. Neal Pope, Edward H. Kellogg, Jr., for appellant.
Oliver B. Dickins, Jr., R. Chris Irwin, for appellee.