77287. CENTRAL OF GEORGIA RAILROAD COMPANY v. COLE.
(381 SE2d 60)

Deen, Presiding Judge.

Edward W. Cole, Jr., was employed by Central of Georgia Railroad and injured his back on December 14, 1984, while guiding a thirty-nine-foot metal rail onto the back of a truck. The truck had a boom crane mounted on its back which raised the rails, and Cole was required to grab one end of the rails in order to help guide it to the side of the truck. As he was holding onto one of the rails between his chest and legs, it suddenly fell approximately three and one-half to four feet, and Cole experienced immediate back pain. The boom was operated by another railroad employee. An accident report of Cole's injury was made, but he was instructed to continue working by his foreman. He claims that neither his foreman nor the track supervisor wanted him to see a doctor. The next day, Cole told his supervisor that he wanted to see a doctor because he had experienced pain all night and was unable to sleep, but he was told to try to work first. Later in the day he was taken to a medical clinic, where he was examined by a doctor's assistant and placed on light duty for one week. He returned to work and worked for the remainder of the day.

One week later, Cole returned to the clinic and was told by the doctor that he should not work for two weeks. After the track supervisor talked to the doctor, the doctor changed his orders to permit him to return to work on the condition that he perform only light duty. Despite this restriction and his complaints that his back was hurting, Cole's foreman ordered him to carry fourteen track jacks which weighed 40 to 50 pounds each and load them on a truck. Cole returned to the doctor complaining of back pain. A brace was prescribed and the work restriction was continued. Cole's complaints continued, and he was diagnosed as having chronic muscle strain be-

cause of long-standing back problems and the heavy work required at his job. He stopped working for the railroad approximately six months after his injury and operated a convenience store which he owned with a partner. In April of 1986, he went to the doctor complaining of leg pain extending down to his foot and was diagnosed as having a protruding or ruptured disc. Cole is presently employed by the railroad in Atlanta. This position pays $25 per day less than his former job as a laborer, and he continues to have problems with his back. He brought a FELA action against his employer seeking damages for his medical expenses, pain and suffering, loss of earnings, and loss of earning capacity. A jury verdict awarded him $170,833.33. The railroad appeals following the denial of its motion for a j.n.o.v. or, in the alternative, for a new trial.

1. Appellant first takes issue with the jury charge on *res ipsa loquitur*, contending that it was not authorized by the evidence because appellee failed to show that the boom did not malfunction because of slack in the cable coming off the boom.

The evidence is undisputed that a heavy metal rail dropped suddenly while being lifted by the boom. The three possible reasons for this occurrence are: slack in the cable, malfunction of the boom, and operator negligence. On cross-examination, Cole denied that the rail dropped because of slack in the cable, and a railroad witness suggested operator negligence. The defectiveness of the boom was shown by testimony that, prior to Cole's injury, there were several complaints from employees to the railroad that it was malfunctioning by suddenly telescoping, and that it continued to malfunction periodically after he was injured. There was no testimony at trial that slack in the cable was a natural occurrence and would not have constituted negligence. Cole testified that the foreman was supposed to make a daily inspection of the crane and boom, but it was never done. All the evidence showed that Cole was required to work with a piece of equipment which his employer knew was malfunctioning, and that after his injury it continued to malfunction. Since it is undisputed that the boom dropped and the only evidence adduced at trial for this incident was circumstantial evidence of malfunction, the court below correctly charged on *res ipsa loquitur*.

Decisions of the federal courts determine whether *res ipsa loquitur* is to be applied in a FELA case. *Dugas v. Kan. City Southern R. Lines*, 473 F2d 821 (5th Cir. 1973). For the doctrine to apply the following conditions must be met: "(1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff." Prosser, Law of Torts, § 39, p. 214 (4th ed. 1971). All that is necessary

in a FELA action for a plaintiff to sustain his burden of proof is to show that his employer's negligence played a role in producing harm. *Gallick v. Baltimore &c. R. Co.*, 372 U. S. 108 (83 SC 659, 9 LE2d 618) (1963). In the instant case, the doctrine was properly charged to the jury.

2. The trial court did not admit prejudicial evidence or argument which tended to encourage an award of punitive damages. The record shows that punitive damages were neither sought nor recovered.

Evidence that Cole's foreman ordered him to carry and load heavy railroad jacks after the accident was admissible and probative of the issue of causation. The treating physician testified that "heavy lifting on a protruding disc can push the herniation further out . . . [and] can cause pressure on the nerve roots . . . which causes pain to be felt in the leg." The doctor further testified that he believed that Cole damaged the disc in his back in the accident and that the continued heavy lifting after that date might have also caused the protruded disc in his back. Evidence that the plaintiff was required to carry heavy jacks was properly admitted to show that the incident either caused or aggravated the disc injury to his back.

Introduction into evidence of testimony as to intentional acts of his supervisor's verbally abusive behavior was also admissible to show aggravation of the plaintiff's disc injury. He had been placed on light duty by his doctor, but was vilified by his supervisor for following the doctor's instructions and ordered to lift heavy pieces of equipment. Such evidence shows that he did not injure his back by voluntarily disobeying his doctor's orders, but rather that he was forced to do so by his supervisor.

3. Contrary to appellant's assertion, counsel for the plaintiff did not argue or present inflammatory and prejudicial evidence as to the relative financial disparity between the railroad and Cole in his closing argument. Counsel quoted Clarence Darrow in closing argument: "I speak for the poor, for the weak, for the weary, for that long line of men who in darkness and despair, have borne the labors of the human race." The railroad contends that this quotation emphasized and contrasted his poor client and the rich railroad. We do not agree with this interpretation of this quotation, which has been taken out of context. Cole's counsel went on to speak of his pride in being a lawyer; that famous men such as Jefferson and Lincoln who were lawyers, and that, like Darrow,[1] he was proud to represent laborers like his

---

[1] Speaking, as to the footnote, only for and as the author of the opinion, and since Darrow's quote is an issue in this case, it is not inappropriate to observe that one of his most often cited and quoted quips was: "It is bigotry for public schools to teach only one view of origins." (Scopes' Trial quote by R. O'Bannon, Dayton Symposium on Tennessee's Evolution Laws 5 (May 18, 1974).)

client. An examination of the entire argument reveals that it falls far short of that disapproved in *Central of Ga. R. Co. v. Howard*, 161 Ga. App. 560 (288 SE2d 347) (1982).

The trial court instructed the jurors that they were not to be governed by sympathy and prejudice, that statements made by the lawyers during closing argument were not evidence, that the case should be considered and decided as an action between persons of equal standing and worth, and that sympathy or prejudice could play no part in determining an award of damages. In ruling upon motions or objections to improper closing argument, the trial court is vested with a sound discretion, and this court will not grant a new trial unless there has been a manifest abuse of that discretion. *Hartford Fire Ins. Co. v. Rowland*, 181 Ga. App. 213, 218 (351 SE2d 650) (1986). We find no abuse of the court's discretion in overruling appellant's objections and motions for a mistrial. We also note that at one point appellant's objection was sustained, but counsel did not seek any cautionary instruction to be given to the jury.

4. The evidence showed that appellee did not receive any income from a convenience store of which he was co-owner although his partner, with whom he lived, received $8,800 in income in 1985. Appellee testified that he had never received any income from the store while he owned it and that his work time from June 1985 until the store was sold in January of 1986 varied from 20 to 40 hours per week. He admitted that his partner furnished him with food, clothing and shelter while he was not working.

Collateral benefits, including charity and gifts, are not admissible into evidence in a FELA case. *Eichel v. N. Y. Central R. Co.*, 375 U. S. 253 (84 SC 316, 11 LE2d 307) (1963). The transcript does not show that appellant ever asked the court to examine the documents it wished to tender into evidence, and the argument in its brief, as well as the transcript, is very confusing. It appears that appellant wanted to tender certain W-2 forms or tax records of appellee's partner, although the record is by no means clear on this issue. The burden is upon the party alleging error to show it affirmatively by the record. *Doster v. Central of Ga. R. Co.*, 177 Ga. App. 393, 400 (339 SE2d 619) (1985).

5. Appellant contends that the trial court improperly permitted the plaintiff, in his closing argument, to argue facts not in evidence concerning damages.

Plaintiff's counsel used a chart which listed several items which he claimed constituted pain and suffering; e.g., "interference with enjoyment of life," "impairment of bodily health and vigor," "limitation of one's activities," etc. Appellant cites no authority that this action constitutes improper argument of the facts in the case, and, indeed, it did show at trial that appellee's life had been limited in the ways

listed. The trial court specifically charged the jury that pain and suffering included anguish, anxiety, shock, worry, discomfort, hardship, shame, humiliation and loss or impairment of the capacity to do work and labor. We do not believe that counsel's argument caused the jury to consider matters outside the evidence and that they applied the charge in determining the amount of damages.

Any complaint by appellant that counsel's argument encouraged the jury to base its award "upon a mathematical which they were to believe was required by law" is also without merit. The transcript shows that counsel repeatedly told the jurors that they were not required to use his figures, and the court charged the jury that statements made by the lawyers in closing argument were not evidence in the case. In ruling on the railroad's motion in limine, the court ruled that an objection to improper argument had to be raised at the time the behavior occurred. No objection was made, and its was therefore waived. Errors not raised in the court below cannot be considered on appeal. *Smith v. Mobley*, 185 Ga. App. 462 (364 SE2d 597) (1988).

6. Appellant further claims that the court below erred in permitting the plaintiff to make arguments which encouraged the jury to apply "The Golden Rule" and to refuse to charge that it was not permissible to award damages based upon what they personally would take if they suffered a similar injury.

We have examined the transcript and find no argument as alleged by the railroad. The jury was instructed that damages must be reasonably proved to be recovered and that its award for pain and suffering would be determined by its fair and impartial enlightened conscience. We find no error.

7. The railroad finally claims that the plaintiff should not have been permitted to call fellow railroad employees for testimony by cross-examination during his case-in-chief.

OCGA § 24-9-81 permits either party in a civil case to call "the opposite party . . . or any agent of said party" for purposes of cross-examination during its case-in-chief. According to the railroad the employees were favorable witnesses for the plaintiff and were eager to testify on his behalf, and under 45 USCA § 60, they would feel no pressure and fear of reprisals from their employer because they are protected for voluntarily furnishing information about an injury to a fellow employee. The railroad also argues that, as the scope of cross-examination is a matter of substance and not procedure, it falls within the scope of federal law. No authority is cited in support of this proposition. We find that this issue is purely a matter of procedure which determines no substantive issue in the case, and that Georgia law applies.

In *Atlanta Joint Terminals v. Knight*, 98 Ga. App. 482 (106 SE2d 417) (1958), a FELA case, the scope of examination under Ga.

Code Ann. § 38-1801 (presently OCGA § 24-9-81) was at issue, and the court held that the agent of either party could be called for purposes of cross-examination. Employees of the defendant railroad were found to be subject to all the pressures and possible prejudices in favor of the defendant-employer which that relationship would tend to engender. See also *Hendley v. Central of Ga. R. Co.*, 609 F2d 1146 (5th Cir. 1980), for a discussion of the pressure placed upon railroad employees if they testify against their employer.

*Judgment affirmed. Carley, C. J., and Sognier, J., concur in the judgment only.*

DECIDED MARCH 7, 1989 —
REHEARING DENIED MARCH 28, 1989 — 

*Neely & Player, Edgar A. Neely, Jr., Miller, Simpson & Tatum, John M. Tatum*, for appellant.

*Billy E. Moore, John Wright Jones, Paul R. Bennett*, for appellee.