## 51411. GEORGIA-PACIFIC CORPORATION v. CORBIN.

ARGUED OCTOBER 29, 1975 — DECIDED NOVEMBER 24, 1975 — REHEARING DENIED DECEMBER 11, 1975 —

*Adams, Adams, Brennan & Gardner, Edward T.*

*Brennan,* for appellant.

*Downing, McAleer & Gaskin, James E. McAleer,* for appellee.

DEEN, Presiding Judge.

Georgia-Pacific's enumerations of error all go to a single argument — that the evidence demanded a finding that the plaintiff was its employee and not that of Thomas E. Gates & Sons, Inc., a contracting firm. This argument is predicated upon testimony which Georgia-Pacific contends proves that the individual who actually contracted for the employment of the plaintiff was both its own special agent and also the general agent of the Gates company. There is no dispute that this individual, Robert Gould, was an employee of Gates at the time plaintiff was hired but Georgia-Pacific argues that Gould was also its "borrowed servant" of Gates and that the employment of plaintiff was effectuated by Gould in his capacity as special agent of Georgia-Pacific and that plaintiff thereby became its employee.

Evidence was introduced to show that Thomas E. Gates & Sons, Inc. had performed work for Georgia-Pacific at the Savannah plant on four occasions. On each job Robert Gould had been sent by Gates, his employer, to perform duties on the project. There was testimony that organized labor could not be dispatched to work for a corporation without going through a contractor who had entered into a contract with the union and that before union men would be referred to an employer it was necessary that the prospective employer had either agreed to enter into a contract with the union or had previously entered into such a contract. Georgia-Pacific had never reached such an agreement with plaintiff's union; Gates had. Wesley Gates, secretary-treasurer of the Gates corporation, testified that since his company had the requisite agreement with the union, it had agreed on previous occasions to "front" construction projects for Georgia-Pacific and that Gould would be "loaned" to Georgia-Pacific to carry out this arrangement. As part of this "fronting" agreement, on jobs prior to the 1972 project involved here, Georgia-Pacific would give Gates the money used for labor and Gates would simply run it

through their books while at other times labor costs were paid directly by Georgia-Pacific. In 1972 however, Gates and Georgia-Pacific reached an agreement whereby Gates would furnish Georgia-Pacific a Project Supervisor (Gould), that Georgia-Pacific would pay Gates for the use of Gould and Gould would in turn be paid by Gates and that "all material, equipment, and labor" would be furnished by Georgia-Pacific. Acting pursuant to this agreement Gates sent Gould to the Savannah project. Gould contacted plaintiff's union and held a meeting at the home of the union's business agent. The employment referral slips given to plaintiff directed him to Gates for employment on the Georgia-Pacific project. Plaintiff was hired by Gould and while working on the construction job he received the injuries for which this suit was instituted.

The applicability of the "borrowed servant" theory in cases involving workmen's compensation has been a source of confusion in this state. Assuming that Gould was Georgia-Pacific's "special employee" and that he and not the plaintiff had been injured, no suit for damages could have been brought against Georgia-Pacific, his "special master." *Forrester v. Scott,* 125 Ga. App. 245 (187 SE2d 323). Yet the "borrowed servant" doctrine would not preclude Gould from recovering workmen's compensation from either his general or his special employer. *U. S. F. & G. Co. v. Forrester,* 126 Ga. App. 762 (191 SE2d 787). Thus there appeared to be an apparent inconsistency in that a "borrowed servant" who is injured while working for his "special master" had no recourse in damages against either of his employers but could recover under workmen's compensation from either his general or his special master; Judge Eberhardt's dissent in the *U. S. F. & G. Co.* decision, stating that the workmen's compensation proceeding should have been instituted against the special rather than the general employer, pointed out this seeming inconsistency and noted ". . . I cannot understand how those who joined in the majority opinion can assume a contrary stance." The Supreme Court has resolved the issue in *U. S. F. & G. Co. v. Forrester,* 230 Ga. 182 (196 SE2d 133) by adopting the special concurrence of Judge Pannell and concurred in by Judge Deen, that a "borrowed servant" has two masters

and as such may recover under our workmen's compensation statute from either; "[T]here is no inconsistency between the holdings in the two cases when the broader interpretation of *Forrester v. Scott,* that of the concurring opinion in the instant case, is applied."

We are unable to conclude that, even assuming as Georgia-Pacific would have us do that Gould was a "borrowed servant," the status of a third party is dispositive of the real issue in *this* case: Was there an employer-employee relationship between Georgia-Pacific and the plaintiff? For under the *U. S. F. & G.* decision, a "borrowed servant" may have two masters and the question remains as to which master was bound by Gould's hiring of the plaintiff.

There is a definite contractual relation between every employee and employer. *Undercofler v. Scott,* 220 Ga. 406 (139 SE2d 299). To every valid contract of employment there must be at least two parties, employer and employee. *Welsch v. Wilson,* 218 Ga. 843 (131 SE2d 194). To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which it can operate. Code § 20-107. The consent of the parties being essential to a contract, until each has assented to all the terms the contract is incomplete . . . Code § 20-108. The evidence was sufficient to show that if Gould was a "borrowed servant," he was also the servant of two masters, both Gates and Georgia-Pacific. Plaintiff testified that he would not have worked on the job directly for Georgia-Pacific because that corporation did not have an agreement with his union. He met with Gould, who had been a party to prior "fronting" arrangements between Gates and Georgia-Pacific, to discuss employment. He was referred to Gates for employment on the project. Apparently at no time was he informed that Gates was not his true employer. The withholding information sheets signed by plaintiff did not indicate anything to the contrary. On these facts we are compelled to conclude that even assuming Gould to be a "borrowed servant" there was sufficient evidence from which a jury could find that there was no assent on plaintiff's part necessary to the creation

of a valid contract of employment between himself and Georgia-Pacific and that he was hired by Gould, acting in his capacity as Gates' agent, to be an employee of that contracting firm. It may have been Gates' intent that those persons hired by Gould be employees of Georgia-Pacific, but the plaintiff is not bound by a secret agreement between Gates and its agent. *Cotton States Life Ins. Co. v. Mallard,* 57 Ga. 64 (3); Code § 4-301. The jury would be authorized on this evidence to estop Gates from denying its employment of the plaintiff. Code § 4-307. There being sufficient evidence to show that there was no contract of employment between the plaintiff and Georgia-Pacific and that he was hired by Gould in his capacity as agent for his general employer, the jury's finding that the plaintiff was not the employee of Georgia-Pacific must stand. A "borrowed servant" may stand in a dual capacity, and there is sufficient evidence to support the jury's finding that the plaintiff was hired by Gould in his capacity as general employee and agent of Gates and not Georgia-Pacific.

Georgia-Pacific argues that since it issued plaintiff's pay checks and paid his benefits into the union's welfare fund in its own name, plaintiff was on notice that it and not Gates was his true employer. As we have noted, there was sufficient evidence from which a jury could conclude that the plaintiff was at least originally hired as an employee of Gates through the actions of its agent, Gould. An employee having no notice of a change in employers is entitled to look to his original master and hold him liable in matters relating to his employment. *Marietta & North Ga. R. v. Hilburn,* 75 Ga. 379. Likewise we feel notice to the employee is necessary before another can claim him as his servant. Here the business agent of plaintiff's union testified that it was not unusual for an owner or corporation to pay the wages directly to the men though they were actually employed by a contractor. This official further testified that at all times the union held Gates and not Georgia-Pacific as the employer of its members responsible for contributions to the union welfare fund. In view of this testimony we believe notice to plaintiff of his employer's identity to be a jury question which was resolved against Georgia-Pacific.

The facts and evidence in this case being sufficient to support the jury's verdict, notwithstanding the status of Gould as a "borrowed servant," the judgment must be affirmed.

*Judgment affirmed. Evans and Stolz, JJ., concur.*