### 59591. HILL v. SIX FLAGS OVER GEORGIA, INC.

McMURRAY, Presiding Judge.

This case involves the grant of a motion for summary judgment with reference to whether or not an iron worker was a borrowed servant of Six Flags Over Georgia, Inc. Plaintiff in this case was an iron worker who was hurt on the job at Six Flags on the "Mind Bender" amusement ride. This tort action is against Six Flags for an injury allegedly resulting from the negligence of employees of this defendant.

On motion for summary judgment the iron worker-plaintiff testified (by affidavit) that his union would not allow its individual members to work for anyone other than a licensed contractor who had signed an employment agreement with its local union. Six Flags was not on the approved list of contractors. Six Flags had employed Jake Heaton Erecting Company, Inc., which had a contract with the union, to send out two iron workers who were certified welders. Plaintiff contends, and testified by deposition and by affidavit, that he was hired by "Jake Heaton Erectors" and sent by Heaton to work at Six Flags, along with his "foreman," one "Buster Newman," to do

any needed job assignments given by the Six Flags supervisor "to Buster Newman, my foreman, and Newman would then give me the work assignments. I did not have to receive or obey any orders from Six Flags employees or supervisors."

The trial court apparently granted defendant's motion for summary judgment on the ground that plaintiff was a borrowed servant whose exclusive remedy lies under the provisions of the Workers' Compensation Act. See Code Ann. § 114-103 (Ga. L. 1972, pp. 929, 930; 1974, pp. 1143, 1144); *U. S. Fidelity &c. Co. v. Forrester,* 230 Ga. 182 (196 SE2d 133). Plaintiff deposed he has "received Workers' Compensation payments through the insurer for Jake Heaton Erectors." Plaintiff appeals. *Held:*

As an issue of material fact remains, summary judgment should not have been granted, albeit the preponderance of the evidence may show these iron workers/welders were borrowed servants and probably violative of the union contract. The plaintiff was either working under the foreman or he was not. Further, the evidence shows that all payroll, social security, income tax withholdings, etc., were prepared by Jake Heaton Erecting Company, Inc., and these were the employees of the steel erecting company. Certainly, if the steel erector's employees did not perform the contract between Six Flags and Heaton, it would be breached. But an issue remains as to whether or not they were borrowed servants or if Newmon ("Buster Newman"), the other employee, was the "foreman." On summary judgment plaintiff's evidence may not be disregarded even though the preponderance of the evidence might show otherwise at a jury trial.

This case is very similar on its facts to that of *Georgia-Pacific Corp. v. Corbin,* 137 Ga. App. 37, 40-41 (222 SE2d 862), involving an alleged borrowed servant although that case was affirmed after jury determination. This court, at page 40, concluded that there was sufficient evidence "from which a jury could find that there was no assent on plaintiff's part necessary to the creation of a valid contract of employment between himself and . . . [the alleged new employer] . . . and that he was hired . . . [by another]." That decision goes on to hold at page 41 that the plaintiff is not bound by a secret agreement between the so-called alleged employers in making him a borrowed servant and further holds that "notice to the employee is necessary before another can claim him as a servant." Clearly, plaintiff's evidence here is that he was never notified that he was a borrowed servant. On the contrary, his testimony is that he worked under a foreman of "Jake Heaton Erectors." Further, in *Flowers v. U. S. S. Agri-Chemicals,* 139 Ga. App. 430, 431 (2) (228 SE2d 392), one of the tests for the determination of a borrowed servant is that the general

master must have no such control over the servant at the time in question. The evidence is in conflict here as to whether the general master, Jake Heaton Erecting Company, Inc., was always in control of this employee, if you believe the testimony of the plaintiff.

Construing the testimony most strongly in favor of the party opposing the motion for summary judgment here, that is, the plaintiff, it is quite clear that an issue of material fact remains as to whether plaintiff is entitled to maintain his suit against Six Flags Over Georgia, Inc. See *Holland v. Sanfax Corp.,* 106 Ga. App. 1 (1), 4 (126 SE2d 442); *Simpson v. Dotson,* 133 Ga. App. 120, 122 (4) (210 SE2d 240); *Burnette Ford, Inc. v. Hayes,* 227 Ga. 551, 552-553 (181 SE2d 866); *Whitehead v. Capital Automobile Co.,* 239 Ga. 460, 462 (238 SE2d 104).

*Judgment reversed. Deen, C. J., Quillian, P. J., Shulman, Banke, Birdsong, Carley and Sognier, JJ., concur. Smith, J., dissents.*

ARGUED MARCH 12, 1980 — DECIDED JULY 16, 1980 —
REHEARING DENIED JULY 30, 1980 —

*Bobby Lee Cook, Jr.,* for appellant.
*Ronald L. Reid, Charles T. Huddleston, Vickie J. Cheek,* for appellee.

SMITH, Judge, dissenting.
I believe the trial court was absolutely correct in granting summary judgment to appellee. I therefore respectfully dissent.

The uncontroverted facts are as follows: Appellant, a certified welder, was hired by Jack Heaton Erectors to work at Six Flags with another Heaton employee, Henry Buster Newmon. Cecil Hale, a Heaton company supervisor introduced appellant and Newmon to Nelson Boyd, mechanical engineer at Six Flags. Boyd had an agreement with Heaton Erectors under which appellant and Newmon were to work under the supervision of Boyd or one of his designees. The agreement placed control of the day to day work assignments in the hands of Six Flags. Appellant and Newmon reported directly to Six Flags, and Boyd or his designee had the power to discharge appellant or Newmon from work at Six Flags. Heaton company supervisor Hale made periodic checks with Six Flags to determine whether appellant and Newmon were performing in a satisfactory manner. On the date of the injury, appellant and Newmon were welding in the Six Flags "shop." However, one of the

Mind Bender ride trains had become stuck in the "barrel" portion of the Mind Bender. Appellant and Newmon were instructed to cease welding and ride over to the Mind Bender structure, where they were to help the Six Flags crew dislodge the ride train. Appellant and Newmon were instructed to climb the Mind Bender structure and assist in rigging a cable to the ride train. A Six Flags employee assisted them on the structure. David Bryan, from his position on the ground, supervised and directed the entire operation. While appellant was on the structure, a cable snapped, causing him to fall and injure himself.

"The real test by which to determine whether a person was acting as the servant of another at the time of the infliction of an injury by him is to ascertain whether *at the particular time when the injury was inflicted* he was subject to the other person's orders and control, and was liable to be discharged from the particular employment for disobedience of orders or misconduct. *Brown v. Smith,* 86 Ga. 277 (12 SE 411, 22 Am. St. Rep. 456). 'One person may be taken to have been the servant of another in respect of a given transaction, although he did not occupy that position for all purposes. In order to establish the relationship, it is merely necessary to show that he was a servant as regards the particular piece of work in which he was engaged *at the time when he sustained or inflicted the injury complained of...* The special master is alone liable to third persons for injuries caused by such wrongful acts as the special servant may commit in the course of his employment.' LaBatt on Master & Servant (2d ed.), § 42." (Emphasis supplied.) *Reaves v. Columbus Electric &c. Co.,* 32 Ga. App. 140, 148 (122 SE 824) (1924); *Adams v. Johnson,* 88 Ga. App. 94 (1) (76 SE2d 135) (1953). "The law as to lent employees is well settled, the test being (1) that the special master must have complete control and direction of the servant *for the occasion;* (2) that the general master must have no such control; (3) that the special master must have the exclusive right to discharge the servant, to put another in his place or to put him to other work." (Emphasis supplied.) *Fulghum Industries v. Pollard Lumber Co.,* 106 Ga. App. 49, 52 (126 SE2d 432) (1962); *Pilcher v. Wise Electric Co.,* 129 Ga. App. 92, 93 (198 SE2d 713) (1973).

Appellant contends a question of fact exists as to whether he was a borrowed servant of appellee because of the following averment contained in his affidavit: "While at Six-Flags, any needed job assignments were given by the Six-Flags supervisor to Buster Newman [sic], my foreman, and Newman [sic] would then give me the work assignments. I did not have to receive or obey any orders from any Six-Flags employees or supervisors." I find this position untenable. Although appellant's affidavit states that he "did not

have to receive or obey any orders from any Six-Flags employees or supervisors . . .", "the trial court is bound by the facts presented in affidavits, depositions, etc., and not the conclusions stated therein." *Varnadoe v. State Farm Automobile Ins. Co.,* 112 Ga. App. 366, 368 (145 SE2d 104) (1965); *Hyman v. Horwitz,* 148 Ga. App. 647, 649 (252 SE2d 74) (1979). In the instant case, the conclusory statement in appellant's affidavit must yield to appellant's own deposition testimony setting forth the sequence of events *at the time of injury.* Appellant testified: "Q. Who was in charge of saying what's going to be done here and here (indicating)? A. I believe David Brian [sic] was — he was there. Q. Well, did you — did you actually hear David Brian [sic] giving orders? A. I am — now, I am not sure. They already had knew [sic] what they were going to do. Q. Who is they? A. Six Flags employees, when we got over there — when we went over there with them, they knew what they were going to do. Q. And you just did what they told you to do? A. *Right, voluntarily, we just did what they said do.*"(Emphasis supplied.)

The remaining averment upon which this appeal is based, that "job assignments were given by the Six-Flags supervisor to Buster Newman [sic], my foreman, and Newman [sic] would then give me the work assignments," also fails to raise a genuine issue of material fact. Appellant's general statement concerning "job assignments" has no legal significance in view of appellant's own sworn testimony that David Bryan and other Six Flags personnel were in complete charge of both appellant and Newmon at the time of injury. See *Brewer v. Southeast Fidelity Ins. Co.,* 147 Ga. App. 562, 564 (249 SE2d 668) (1978); *Backus v. Ray Jones, Inc.,* 150 Ga. App. 753, 755 (258 SE2d 693) (1979). Nowhere in the record is appellant's testimony controverted by "specific facts showing that there is a genuine issue for trial." CPA § 56 (e) (Code Ann. § 81A-156 (e)); *Dunaway v. North Georgia Co.,* 150 Ga. App. 66 (256 SE2d 669) (1979). " 'It is the duty of each party to present his case in full at the hearing on motion for summary judgment. [Cit.]' *Colodny v. Dominion Mtg. &c.,* 141 Ga. App. 139, 141 (232 SE2d 601)." *Baker v. C. & S. Nat. Bank,* 147 Ga. App. 188, 189 (248 SE2d 224) (1978).

I conclude that at the time of the injury appellant was appellee's "borrowed servant," as this term is defined in *U. S. Fidelity &c. Co. v. Forrester,* 230 Ga. 182, 183 (196 SE2d 133) (1973). In my view, the trial court's grant of summary judgment to appellee was clearly correct. I therefore cannot join in the erroneous conclusion reached by the majority in this case.