### 36749. SIX FLAGS OVER GEORGIA, INC. v. HILL.

HILL, Presiding Justice.

We granted certiorari in this case to determine whether the plaintiff was a borrowed servant of Six Flags as a matter of law and therefore barred by the Workers' Compensation Act from suing Six Flags in tort for an on-the-job injury. Code Ann. § 114-103.[1] The trial court held that he was a borrowed servant and granted Six Flags' motion for summary judgment. The Court of Appeals, sitting en banc, reversed, holding that issues of material fact remain. *Hill v. Six Flags Over Georgia,* 155 Ga. App. 457 (270 SE2d 914) (1980).

The evidence shows that Jake Heaton Erecting Company, Inc., orally agreed with Six Flags to provide it with two ironworker/welders to do repair and maintenance work on the "Mind Bender" amusement ride which Heaton had constructed. Heaton Erecting sent one of its regular employees, Henry Newmon, and the plaintiff, Wallace Elmo Hill. Hill was hired from the union hall. Hill's union had a policy of refusing to hire out its members to anyone other

---

[1] Regarding the right of a borrowed servant to recover workers' compensation from the borrowing employer (special master), see *U. S. Fidelity &c. Co. v. Forrester,* 230 Ga. 182 (196 SE2d 133) (1973).

than a licensed contractor who had signed an employment agreement with the union; Heaton was such a contractor while Six Flags was not.[2]

Newmon and Hill were taken to Six Flags by a Heaton employee who made periodic checks to see if they were performing satisfactorily. Newmon and Hill were paid by Heaton Erecting. Newmon stated in his affidavit that he and Hill were introduced to a Six Flags employee, David Bryan, and told he "would be our immediate supervisor while we were working on this job, and would give us our daily work assignments." Newmon goes on to state, "Mr. Bryan gave us various work assignments, including such jobs as welding parts and wheels on the cars of the ride, tightening bolts on the track, and checking the track for problems. Most of the welding was done in a shop located about a mile from the Mind Bender ride... After we had been welding for several days, on or about June 29, 1978, Mr. Bryan came to us at the shed and requested that Mr. Hill and I ride over to the Mind Bender steel structure and help his crew dislodge one of the ride trains (which consisted of some of the cars on which we had been welding) from where it had become stuck at the bottom of one of the loops. Mr. Bryan informed me that he had decided to use the Six Flags winch truck in trying to pull the cars up the loop from their lodged position at the bottom of the loop. Mr. Bryan instructed Mr. Hill and me to climb up on the Mind Bender steel support structure and to rig the cable with pulleys and snatch blocks so that the train could be pulled in an upward direction from where it was lodged... Mr. Bryan, from his position on the ground, was the supervisor of the entire project of moving the Mind Bender train up the loop from where it was lodged." In his deposition, Hill also stated that Bryan was in charge of this operation. During its execution, a cable snapped and Hill fell and sustained injuries, allegedly as the result of negligence of Six Flags' employees, for which he seeks to recover.

In his affidavit, Bryan states that while Newmon and Hill were working at Six Flags, Bryan had control of their day-to-day work assignments and could have discharged or replaced them if at any

---

[2] This information appears in Hill's affidavit. The Court of Appeals stated that Hill stated in this affidavit that his union would not allow its individual members to work for anyone other than a licensed contractor who had signed an employment agreement with its local union. *Hill v. Six Flags Over Georgia*, supra, 155 Ga. App. at 457. Actually, the affidavit merely states that the union would not hire out its members to such contractors, not that its members could not work for such contractors. See *Georgia-Pacific Corp. v. Corbin*, 137 Ga. App. 37, 38 (222 SE2d 862) (1975).

time their work had been unsatisfactory. He also states, "On the date of the incident in question, Messrs. Hill and Newmon were working under my direct supervision and control. . . . During the operation of attempting to get the train unstuck, I had overall supervisory control of the manner and method used during the operation." For his part, regarding the stuck cars Hill stated in his deposition: "I believe that David Bryan was . . . [in charge of saying what was going to be done]," and that he and Newmon were not "in charge of the job." He then indicated that although he wasn't making any decisions, Newmon might have been.[3] Hill also said that David Bryan and the man over him were in overall control and when asked, "And if they told you to do something, you did it?", he responded, "Right." At another point he testified: ". . . we just did what they said do."

1. We held in *U. S. Fidelity &c. Co. v. Forrester,* 230 Ga. 182, 183 (196 SE2d 133) (1973), that in order for an employee to be a borrowed employee, the evidence must show that "(1) the special master had complete control and direction of the servant for the occasion; (2) the general master had no such control, and (3) the special master had the exclusive right to discharge the servant." See also *Fulghum Industries v. Pollard Lumber Co.,* 106 Ga. App. 49 (2) (126 SE2d 432) (1962). Thus these tests must be applied to the facts in this case.

In applying the first test, we note that it requires that the special or borrowing master have complete control and direction only for the occasion at issue. This is consistent with the Rest. Agency 2d, § 227, which states, "A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services. *He may become the other's servant as to some acts and not as to others."* (Emphasis supplied.) See also Comment a. Thus we are not concerned here with whether Hill was always under the control and direction of Six Flags but whether he was on the occasion when the injury occurred. *U. S. Fidelity &c. Co. v. Forrester,* supra; *Fulghum Industries v. Pollard Lumber Co.,* supra. Regarding the importance of the particular occasion in question, see also *Reaves v. Columbus Electric &c. Co.,* 32 Ga. App. 140, 148 (122 SE 824) (1924).

In this case, focusing on the occasion makes a significant difference. As to Hill's work at Six Flags generally, the evidence shows that he was given daily work assignments (i.e., told what to do) either by Newmon or Six Flags employees; it does not indicate that he

---

[3] Newmon, however, stated in his affidavit that Bryan was supervising this operation; i.e., Newmon was not supervising Hill at the time of the injury in question.

was told *how* to do it. Hill was, of course, a skilled worker. See Rest. Agency 2d, § 227, Illus. 2. But as to this occasion, the fact that Six Flags employees (David Bryan and his supervisor) were in charge of how the work was done and that Hill was under their control and supervision is undisputed.[4] Thus Six Flags' evidence satisfies the first test. Likewise it satisfies the second test, that is, it conclusively appears that the general master, Heaton Erecting, had no control over Hill on this occasion. As for the third test, it is undisputed that Six Flags had the exclusive right to discharge Hill, that is, that Six Flags could unilaterally discharge Hill from working on the stuck Mind Bender cars and from working at Six Flags. Hill, therefore, was a borrowed servant of Six Flags at the time of the injuries in question.

2. In determining that there was a material question of fact as to whether Hill was a loaned employee, the Court of Appeals found this case similar to *Georgia-Pacific Corp. v. Corbin,* 137 Ga. App. 37 (222 SE2d 862) (1975). There the Court of Appeals indicated that in order for a borrowed servant to be precluded from suing the special master in tort there must be notice to and assent by the borrowed servant as to the special relationship. However, in *Corbin* the employee was unaware that his supervisor was a borrowed servant of the special master as well as an employee of the general master. Hence the employee was not on notice of the facts making him a borrowed servant. In this case, Hill admits notice of and assent to the facts creating the special relationship. It is not necessary that the borrowed servant be on notice of and give his assent to the legal consequences of the special relationship where he has notice of the necessary facts and assents to perform the work at the direction and under the control of the special master. Therefore the trial court was correct in granting defendant Six Flags' motion for summary judgment.

*Judgment reversed. All the Justices concur, except Smith, J., who is disqualified.*

DECIDED APRIL 7, 1981.

*Alston, Miller & Gaines, Ronald L. Reid, Vickie Cheek Lyall,* for appellant.

---

[4] Hill's testimony to the effect that Newmon gave him his work assignments relates to Hill's work generally and not to the occasion at issue. Hill's statement that he did not have to obey orders from Six Flags' employees is contradicted by the fact that at the time in question Hill was obeying such orders. *Chambers v. C. & S. Nat. Bank,* 242 Ga. 498, 502 (249 SE2d 214) (1978).

*Cook & Palmour, Bobby Lee Cook, Jr.,* for appellee.