A95A0082. SOUTHERN RAILWAY COMPANY v. HAND.
(454 SE2d 217)

BLACKBURN, Judge.

Southern Railway Company d/b/a Norfolk Southern Railroad Corporation (Southern) appeals the judgment entered against it on the jury's award of $350,000 to Dale Hand. Hand brought the underlying action to recover damages for injuries he sustained when the high-rail truck in which he was riding suddenly stopped, throwing him to the ground. The truck stopped because the passenger-side outrigger was in a lowered position, thus allowing it to hit a switch tie.

1. In its first enumeration of error, Southern contends the trial court erred in denying its motion for directed verdict and motion for j.n.o.v. on the issue of Hand's status as a borrowed servant. On the date of the injury, Hand was employed by Bankhead Maintenance Company as a foreman of welding crews. He was working on Southern's rail as a part of his job with Bankhead. However, Southern contends that Hand was actually a borrowed servant which would preclude the present action pursuant to OCGA § 34-9-11 (a).

" 'A special master employing a special servant who is a general servant of a general master . . . is not such a third person against whom a common-law action will lie under the provisions of the (Workers') Compensation Law, as provided in (OCGA § 34-9-11 (a)).' *Scott v. Savannah Elec. &c. Co.*, 84 Ga. App. 553, 557-558 (66 SE2d 179) (1951). 'Ordinarily, when one lends his servant to another for a particular employment, the servant will be dealt with as a servant of the person to whom he is lent, although he remains the general servant of the person who lent him. (Cits.)' *Merry Bros. Brick &c. Co. v.*

*Jackson*, 120 Ga. App. 716, 719 (171 SE2d 924) (1969). '(I)n order for an employee to be a borrowed employee, the evidence must show that "(1) the special master had complete control and direction of the servant for the occasion; (2) the general master had no such control, and (3) the special master had the exclusive right to discharge the servant." (Cit.)' *Six Flags Over Ga. v. Hill*, 247 Ga. 375, 377 (1) (276 SE2d 572) (1981). Moreover, 'in order for a borrowed servant to be precluded from suing the special master in tort there must be notice to and assent by the borrowed servant as to the special relationship.' *Six Flags Over Ga. v. Hill*, supra at 378 (2) (citing and distinguishing *Georgia-Pacific Corp. v. Corbin*, 137 Ga. App. 37 (222 SE2d 862) (1975))." *Rothrock v. Jeter*, 212 Ga. App. 85, 86-87 (441 SE2d 88) (1994).

In the present case, Hand testified that (1) he received his daily work assignments from Southern employees; (2) Southern employees took him to the job site on many occasions, such as the day he was injured; (3) Southern employees helped him unload the truck and prepare his work site; (4) Southern employees could, if they needed to, move him to another job or remove him from a job; and (5) Southern employees could make him redo a job.

Southern maintains that Hand's testimony was sufficient to prove that he was a borrowed servant. We cannot agree. Hand's testimony failed to establish both that Southern had the *exclusive* right to discharge him, and that Bankhead had no control and direction over him for the occasion at issue. These elements were required in order to establish that Hand was a borrowed servant. See *Six Flags Over Ga.*, supra. Therefore, the trial court did not err in denying Southern's motion for directed verdict and j.n.o.v., as Southern failed to satisfy its burden of proof on the issue of Hand's status as a borrowed servant.

2. Southern contends that Hand was its statutory employee and as such the trial court erred in denying its motions for directed verdict and j.n.o.v. on the issue of liability.

"By its terms, OCGA § 34-9-8 (a) provides *for* secondary *liability* for an injured employee's workers' compensation benefits. Only an entity who is secondarily liable for workers' compensation benefits under OCGA § 34-9-8 (a) is consequently entitled to tort immunity under OCGA § 34-9-11. As recognized originally in *Evans* [*v. Hawkins*, 114 Ga. App. 120 (150 SE2d 324) (1966)] and subsequently in *Manning* [*v. Ga. Power Co.*, 252 Ga. 404 (314 SE2d 432) (1984)], it is only a 'contractor' who is secondarily liable for workers' compensation benefits and who is, therefore, entitled to tort immunity. An owner who is merely in possession or control of the premises would not be subject to workers' compensation liability as a statutory employer and would not be immune from tort liability. However, this would not be

the result of his status as an 'owner,' but of his lack of status as a 'contractor.' " *Yoho v. Ringier of America*, 263 Ga. 338, 341 (434 SE2d 57) (1993).

"An 'owner' does not attain 'contractor' status under OCGA § 34-9-8 (a) by [its] active involvement in the enterprise, but only ' "in the isolated situation where [it] also serves as a *contractor for yet another entity* and hires another contractor to perform the work on the premises." (Cit.)' (Emphasis supplied.) *Manning v. Ga. Power Co.*, supra at 406." *Yoho*, supra at 341. Southern argues that because CSX also uses the rail lines and that its contract with CSX requires it to keep the lines in working order, as a "contractor," it hired Bankhead, thereby making Hand a statutory employee. However, Southern failed to introduce any evidence which showed that it was CSX's contractor for the purposes of maintaining the rail lines. Therefore, the trial court correctly denied Southern's motions on this issue.

3. Southern contends that the trial court erred in failing to grant its motions for directed verdict or j.n.o.v. on the issue of liability, due to Hand's failure to prove any negligence. Hand did not produce direct evidence of Southern's negligence, but relied on circumstantial evidence.

Southern's truck was equipped with outriggers on the driver and passenger sides in order to stabilize it while lifting heavy objects. However, before driving the vehicle, the outriggers should be raised. The outriggers on both the driver and passenger sides could be raised and lowered by knobs on either side of the truck which move the outriggers only while pressure was applied to the knob.

On the day of the incident, a Southern employee drove the truck to the worksite to pick up Hand and heavy equipment. The employee lowered the outriggers and loaded the heavy equipment onto the truck. Hand saw the Southern employee "letting the (passenger side) outrigger up." Hand asked the employee for the time, but did not notice if the outrigger was raised to its highest position. The Southern employee testified that the passenger-side outrigger was fully up before he went to the driver's side of the truck. The driver's-side outrigger became stuck on a bolt during its ascent. Another Southern employee used a crow bar to free the outrigger. The Southern employees were using the crow bar in the area where the levers used to control the passenger-side outrigger were located. Once the driver's-side outrigger was raised, the Southern employee proceeded to back the truck along the tracks. After proceeding for approximately 147 feet, the outrigger on the passenger side struck a switch box which stopped the truck and propelled its passengers out of the truck bed. The outrigger was a little more than half-way down from the raised position. Southern's mechanic was unable to find any mechanical malfunction in the truck or its outriggers which would have allowed the outrigger

to descend on its own.

"Negligence is not to be presumed, but is a matter for affirmative proof." (Citations and punctuation omitted.) *Ellis v. Sears Roebuck & Co.*, 193 Ga. App. 797 (1) (388 SE2d 920) (1989). We have previously recognized that mechanical devices "get out of working order, and sometimes become dangerous and cause injury without negligence on the part of anyone." Id. at 797-798. However, in the present case, there was no evidence of mechanical malfunction, as in the *Ellis* case.

In *Southern R. Co. v. Ga. Kraft Co.*, 258 Ga. 232, 233 (367 SE2d 539) (1988), the Georgia Supreme Court stated that "[t]he standard for reviewing the legal sufficiency of circumstantial evidence, which is sole support for the finding under review, can be stated as follows: 'While in such cases the sufficiency of the evidence is for the jury, yet before there is, in legal contemplation, any evidence, the circumstances shown must, in some appreciable degree, tend to establish the conclusion claimed. . . . [*Radcliffe v. Maddox*, 45 Ga. App. 676, 681-682 (165 SE 841) (1932).]' As further held in *Radcliffe*, 'In neither criminal nor civil cases is it required that the proved circumstances shall show consistency with the hypothesis claimed and inconsistency with all other reasonable theories to the point of logical demonstration. In civil cases all other reasonable theories are excluded when *proved circumstances of real and actual probative value* cause the jury to find that the preponderance of the evidence is in favor of the hypothesis claimed, as against all other reasonable but less probable theories. Where a decision is required between two or more antagonistic theories, an authorized finding that the evidence preponderates to one theory as against all the others necessarily carries with it a finding that the rejected theories are excluded. Id. at pp. 682-683.' " (Emphasis supplied.)

In the present case, there was "proved circumstances of real and actual probative value" that would allow "the jury to find that the preponderance of the evidence" was in favor of finding negligence on the part of the Southern employee whose responsibility it was to secure the outriggers. See id. Therefore, the trial court correctly denied Southern's motions on the issue of negligence.

4. The trial court did not err in failing to charge the jury with Southern's requests to charge regarding the burden of proof and the existence of two opposing theories. Reviewing the trial court's charge as a whole, it sufficiently set forth Hand's burden of proof. The trial court charged the jury regarding preponderance of the evidence, opinion testimony, circumstantial evidence, and negligence. This portion of the trial court's charge accurately set forth the principles of law covered in Southern's requested charges.

"It is axiomatic that a jury charge need not be given in the exact language requested if the charge as given clearly covers the circum-

stances of the case. All that is necessary, provided the requested charge accurately states the relevant principles of law, is that these principles be fairly given to the jury in the general charge. When it can be determined that the charge actually given conveys correctly the intent of the law and is so framed as to be applied with understanding to the fact situation, denial of a request for a specific charge is not reversible error." (Citation and punctuation omitted.) *City of Dalton v. Smith*, 210 Ga. App. 858, 859 (437 SE2d 827) (1993).

5. Southern contends the trial court erred in admitting in toto Hand's medical records. However, the transcript is clear that the medical records were admitted for the record only and were not sent out with the jury. Pretermitting whether it was correct to admit the records, Southern has failed to show any harm by their admission only to the record, and not to the jury. Therefore, its enumeration of error is without merit. See *Hill v. Johnson*, 210 Ga. App. 824, 825 (437 SE2d 801) (1993).

6. In its sixth enumeration of error, Southern asserts the trial court erred in admitting the testimony of Peter O. Holliday III, M.D. Southern argues Dr. Holliday's entire deposition should have been excluded as his opinion was based on the opinion of other doctors. Southern did not specify any specific portion of Dr. Holliday's testimony that was based on hearsay, but merely sought to exclude it in toto.

Dr. Holliday testified that he examined Hand, took Hand's medical history, and reviewed Hand's medical records. His testimony established an independent basis for his opinion. Furthermore, "[w]here a portion of the evidence is admissible and a portion inadmissible, objection to the evidence as a whole which does not limit itself to objectionable parts is insufficient." (Citation and punctuation omitted.) *Southern R. Co. v. Minor*, 196 Ga. App. 183, 184 (395 SE2d 845) (1990).

7. Southern contends the trial court erred in allowing Hand's counsel to testify as to a calculation of projected future lost wages. Southern's objection is contained in the record only after closing arguments and the charge to the jury. Although Southern's counsel refers to his earlier "objection," such objection was not made on the record, nor does the transcript contain evidence of an objection at the time the complained of remarks were made.

During his closing argument, Hand's counsel informed the jury at least twice that his figures were only for the purpose of examples. Therefore, pretermitting whether an objection was properly made, we find that the trial court did not abuse its discretion in allowing Hand's counsel to give the jury an example of cost of living salary increases. See *Central of Ga. R. Co. v. Cole*, 191 Ga. App. 53, 57 (381 SE2d 60) (1989).

8. Southern contends the trial court erred in allowing Hand's medical expenses as an item of damages to go to the jury as such damages had been paid by Bankhead Enterprises workers' compensation carrier. In a tort action brought by the injured party against the alleged tortfeasor, the collateral source rule applies to allow the injured party an undiminished recovery of medical expenses. See *Mixon v. Lovett*, 122 Ga. App. 517, 519 (177 SE2d 826) (1970). Therefore, Southern's eighth and ninth enumerations of error are without merit.

9. In two enumerations of error, Southern contends the trial court erred in allowing the issue of lost wages to go to the jury. Southern argues that as two doctors authorized Hand to return to work, the jury was not authorized to return a verdict for lost wages.

Similar to the medical expenses issue, Hand was entitled to recover all wages he may have lost as the result of his physical injury. See *Amalgamated Transit Union Local 1324 v. Roberts*, 263 Ga. 405, 407 (434 SE2d 450) (1993). Furthermore, Hand's testimony that he was in too much pain to work properly rebutted the doctors' testimony regarding his ability to return to work. See *Southern R. Co. v. Oliver*, 177 Ga. App. 729, 732 (341 SE2d 270) (1986).

In the present case, there was "proved circumstances of real and actual probative value" that would allow "the jury to find that the preponderance of the evidence" was in favor of finding that Hand was unable to work due to the pain caused by his injury. See *Southern R. Co. v. Ga. Kraft Co.*, supra.

10. In Southern's final enumeration of error, it contends the trial court erred in denying its motion for new trial based upon the general grounds. However, Southern fails to present any issue by this enumeration that has not been reviewed previously in this opinion. Therefore, we find that it is also without merit.

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED FEBRUARY 22, 1995 —

Jones, Cork & Miller, Carr G. Dodson, H. J. Strickland, Jr., for appellant.

*Reynolds & McArthur, W. Carl Reynolds, Katherine L. McArthur, Charles M. Cork III,* for appellee.