**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 18, 2014**

# In the Court of Appeals of Georgia

A14A1397. GARDEN CITY, GA. v. ANN J. HERRERA, AS CONSERVATOR OF ADULT WARD LISA NICOLLE MUSE

DILLARD, Judge.

Garden City, Georgia (the "City") appeals the trial court's denial of its motion for summary judgment in a negligence action brought by Ann J. Herrera, as conservator of adult ward Lisa Nicolle Muse. On appeal, the City argues that the trial court erred in (1) finding that it could be held liable because the requirements of the borrowed-servant rule were not satisfied, and (2) failing to apply the rules of contract construction in making that determination. For the reasons set forth *infra*, we reverse.

Viewed in the light most favorable to Herrera (*i.e.*, the nonmoving party),[1] the record shows that on March 25, 1994, the City and Chatham County, Georgia (the "County") entered into a County-City Agreement for Drug Enforcement Activities (the "Agreement"). This Agreement resulted in the formation of the Counter Narcotics Team (the "CNT" or "Drug Unit"), a multijurisdictional task force.[2] And under the terms of the Agreement, the City had the right to assign at least one of its police officers to the CNT for a 27-month "tour of duty," which could be extended if necessary. Officers who were assigned by the City to the CNT remained employees of the City, and while the CNT's commanding officer and the City's police chief could both remove an assigned officer from his tour of duty, only the City could terminate an assigned officer's employment as a City officer. However, during an

---

[1] *See, e.g.*, *McCaskill v. Carillo*, 263 Ga. App. 890, 890 (589 SE2d 582) (2003) ("On appeal from the grant or denial of a motion for summary judgment, we review the evidence de novo, and all reasonable conclusions and inferences drawn from the evidence are construed in the light most favorable to the nonmovant.").

[2] The County assumed responsibility for forming and managing the CNT, and it entered into separate agreements with each of the "participating governments." Under these agreements, the CNT was staffed with loaned police officers from those governments, but the CNT's "commanding officer" was a permanent County employee.

2

officer's tour of duty, the City conferred "exclusive directive supervision and authority" over the officer to the CNT commander.

In 2007, the City hired Judd Robert West as a police officer, and shortly thereafter, the police chief assigned him to the CNT. And in accordance with the Agreement, the CNT commander had "exclusive directive supervision" over West during his tour of duty.

In July 2010, while assigned to the CNT, West was involved in a motor-vehicle collision with a car driven by Muse. At the time of the accident, West was driving from the location of one task-force operation to another pursuant to orders given by his supervising CNT officer. Subsequently, in June of 2012, Muse, through Herrera, filed a complaint to recover damages for serious injuries that she suffered as a result of the accident, naming several defendants, including the City and the County.

After discovery, the City moved for summary judgment, arguing that, at the time of the accident, West was a "borrowed servant" of the County, and under the borrowed-servant rule, the City was not liable for any injuries sustained by Muse. The trial court denied the motion, finding that there was a jury question regarding whether, at the time of the collision, the County retained the exclusive authority to discharge West from his duties, which is a requirement of the borrowed-servant rule.

3

Thereafter, the City filed an application for an interlocutory appeal, which we granted. This appeal follows.

To begin with, we note that summary judgment is appropriate when "the moving party can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law."[3] A defendant meets this burden when the court is shown that "the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case."[4] Finally, if the moving party satisfies this burden, "the nonmoving party cannot rest on its pleadings, but must point to specific evidence giving rise to a triable issue."[5] With these guiding principles in mind, we turn now to the City's enumerations of error.

1. The City first argues that the trial court erred in denying its motion for summary judgment because the evidence established that, at the time of the accident,

---

[3] *Albertson v. City of Jesup*, 312 Ga. App. 246, 248 (718 SE2d 4) (2011) (punctuation omitted).

[4] *Id.* (punctuation omitted).

[5] *Id.* (punctuation omitted).

4

the County had the exclusive right to discharge West from the work that he was performing. We agree.

Ordinarily, when an employee commits an act of negligence within the scope of his or her employment, the employer is liable under traditional principles of respondeat superior.[6] But one widely recognized exception to the doctrine of respondeat superior is the borrowed-servant rule,[7] which provides that if a master lends his servant to another then "the master is not responsible for any negligence of the servant committed within the scope of his employment by the other."[8] And for an employee to be deemed a borrowed servant, the evidence must show that "(1) the special master had complete control and direction of the servant for the occasion; (2) the general master had no such control[;] and (3) the special master had the exclusive right to discharge the servant."[9] Furthermore, in applying the borrowed-servant rule,

---

[6] *Hoffman v. Wells*, 260 Ga. 588, 589 (2) (397 SE2d 696) (1990).

[7] *See id.*; *Alta Refrigeration, Inc. v. AmeriCold Logistics, LLC,* 301 Ga. App. 738, 743 (1) (688 SE2d 658) (2009); *Odum v. Superior Rigging & Erecting Co.*, 291 Ga. App. 746, 748 (662 SE2d 832) (2008).

[8] *Hoffman*, 260 Ga. at 589 (2); *accord Alta Refrigeration, Inc.,* 301 Ga. App. at 743 (1).

[9] *Six Flags Over Ga., Inc. v. Hill*, 247 Ga. 375, 377 (1) (276 SE2d 572) (1981) (punctuation omitted); *accord Hoffman*, 260 Ga. at 589 (2); *U.S. Fid. & Guar. Co. v.*

5

courts should focus only on "the occasion when the injury occurred,"[10] as *each* prong

relates "only to the *specific task* for which the servants are loaned."[11] Thus, the "right

to discharge" means that the special master must have "the right to discharge the

servant from [his] particular work."[12]

On appeal, the parties agree that West's employment arrangement satisfies the

first two prongs of the borrowed-servant rule. Specifically, they agree that the CNT

commander (the "special master") had complete control and direction over West

during his tour of duty and the City (the "general master") had no such control. Thus,

only the third prong is in dispute. And as to the third prong, the parties disagree as to

---

*Forrester*, 230 Ga. 182, 183 (196 SE2d 133) (1973); *Fulghum Indus., Inc. v. Pollard Lumber Co.*, 106 Ga. App. 49, 52 (2) (a) (126 SE2d 432) (1962).

[10] *Six Flags Over Ga., Inc.*, 247 Ga. at 377 (1); *see Howard v. J. H. Harvey Co.*, 239 Ga. App. 677, 679 (1) (521 SE2d 691) (1999) ("All three prongs of the test must focus on the occasion when the injury occurred rather than the work relationship in general."); *Stephens v. Oates*, 189 Ga. App. 6, 7 (1) (374 SE2d 821) (1988) (*citing Six Flags* and explaining that our Supreme Court has "refined [the borrowed-servant] test by indicating that all three prongs of the test must focus on 'the occasion when the injury occurred' rather than the work relationship in general").

[11] *Fulghum Indus., Inc.,* 106 Ga. App. at 52 (2) (a); *see Preston v. Ga. Power Co.*, 227 Ga. App. 449, 451 (1) (489 SE2d 573) (1997).

[12] *Fulghum Indus., Inc.,* 106 Ga. App. at 52 (2) (a); *see Jarrard v. Doyle*, 164 Ga. App. 339, 340 (1) (297 SE2d 301) (1982).

whether the County had the "exclusive right" to discharge West even though the City

reserved the right to terminate his employment or remove him from his assignment

at any time. Specifically, the City argues that binding authority supports its position

that the County had such authority—relying heavily on our Supreme Court's decision

*Six Flags Over Ga., Inc. v. Hill*,[13] as well as this Court's decisions in *Preston v. Ga.*

*Power Co.*[14] and *Jarrard v. Doyle*.[15]

But before considering the foregoing precedents, we return to the Agreement,

which is controlling in determining West's employment status because it expressly

---

[13] 247 Ga. at 375-77 (1) (holding that the borrowed-servant rule applied because "it is undisputed that Six Flags had the exclusive right to discharge [the loaned employee], that is, that Six Flags could *unilaterally* discharge [him] from working on the stuck Mind Bender cars and from working at Six Flags.").

[14] 227 Ga. App. at 451 (1) (holding that because it was undisputed that the borrowing employer had the unilateral right to discharge the employee from the particular work he was performing at the time of the injury and the lending employer had no right to countermand that decision, the third prong of the borrowed-servant rule was satisfied.).

[15] 164 Ga. App. at 339-40 (1) (holding that the plumbing company "clearly had the exclusive right to control and direct the [employee's] work on the particular task in question, as well as [the right] to dismiss him from that task for unsatisfactory performance," and as such, all three requirements of the borrowed-servant rule were satisfied.).

7

addressed all three prongs of the borrowed-servant rule.[16] In relevant part, the Agreement provided that the "Commanding Officer [of the CNT] [could] not terminate the employment of any individual on a tour of duty on the Drug Unit . . . [and] [o]nly the [City] ha[d] the authority to change an officer's employment status, rank or pay." Nevertheless, the Agreement also provides that "[a]ll personnel serving on a 'Tour of Duty' serve at the pleasure of the Commanding Officer," who could "request that any individual be replaced for any reason," and, when such a request is made, it "must be granted by the [City] and a replacement made within thirty (30) days." Finally, the City reserved the right to "remove an officer from the Drug Unit for reassignment, promotion, or other reasons," but during the officer's tour of duty, the City agreed to "relinquish all command and directive authority over [its] assigned personnel and confer exclusive directive supervision and authority to the direction of the Drug Unit Commander."

As to West, the City's chief of police testified that, in accordance with the Agreement, the CNT commander had the right to terminate West's tour of duty, and

---

[16] *See Tim's Crane & Rigging, Inc. v. Gibson*, 278 Ga. 796, 797 (604 SE2d 763) (2004) (noting that when a written contract sets forth each requirement of the borrowed-servant rule, "[t]he contract between the parties is controlling as to their responsibilities thereunder"); *see Southway Indus. Servs., Inc. v. Boyd*, 283 Ga. App. 850, 853 (642 SE2d 889) (2007) (same).

8

the City also reserved the right to terminate his employment or remove him from the CNT assignment "at any time . . . for any reason." But the chief of police had "no control whatsoever over the hours that [West was] assigned nor what he [did] during those hours." Similarly, the CNT commander testified that, throughout West's tour of duty (including on the date of the accident), the CNT had "exclusive directive supervision" over him and "the authority to tell [him] what to do." Indeed, according to the CNT commander, West was acting on his CNT supervisor's instructions at the time of the accident, and if the police chief had instructed West to do otherwise, the City would have violated the terms of the Agreement.

Similarly to those in *Six Flags*, *Preston*, and *Jarrard*, the undisputed facts in the case *sub judice* show that, at the time of the collision, the County, as the borrowing employer (and special master), had the unilateral right to discharge West from his assignment with the CNT[17] and from the specific task that he was

_____

[17] The trial court found that there was a question of fact regarding whether the County could discharge a CNT officer because, under the Agreement, the CNT commander could only *request* a replacement officer, and the City had 30 days to honor that request. Thus, the court found that it was unclear whether the officer would be discharged immediately or could continue working until the replacement was made. However, the Agreement provided that the City *must* honor any request for a replacement, and even if the CNT officer continued to work until the replacement was made, it was undisputed that the CNT commander had the authority to discharge a CNT officer from any specific task that he was performing on the occasion when the

9

performing. Indeed, it is undisputed that, at the time of the accident, West was driving to the location of a task-force operation pursuant to his CNT supervisor's instructions, and the City had no authority to countermand those instructions.[18] And while the City, as a general matter, retained some authority over West, including the right to remove him from his assignment to the CNT, the County had the exclusive and unilateral right to discharge West from the specific task he was performing for

injury occurred. As explained *supra*, when evaluating the third prong of the borrowed-servant rule, we look only to the particular occasion when the injury occurred rather than the work relationship in general. *See Howard*, 239 Ga. App. at 679 (1).

[18] *See Preston*, 227 Ga. App. at 452 (1) (finding that the third prong of the borrowed-servant rule was satisfied when it was undisputed that the borrowing employer had the unilateral right to discharge the employee from the particular work he was performing at the time of the injury and the lending employer had no right to countermand that decision).

the CNT at the time the injury occurred.[19] In light of the foregoing, we find that the

third prong of the borrowed-servant test was satisfied.[20]

---

[19] *See Howard*, 239 Ga. App. at 679 (1) ("All three prongs of the test must focus on the occasion when the injury occurred rather than the work relationship in general."); *see Stephens*, 189 Ga. App. at 7 (1) (*citing Six Flags* and explaining that our Supreme Court has "refined [the borrowed-servant] test by indicating that all three prongs of the test must focus on 'the occasion when the injury occurred' rather than the work relationship in general"); *Fulghum Indus., Inc.,* 106 Ga. App. at 52 (2) (a) (explaining that all three prongs of the borrowed-servant rule relate "only to the *specific task* for which the servants are loaned").

[20] *See Six Flags Over Ga., Inc.*, 247 Ga. at 377 (1) (holding that a borrowing employer had the exclusive right to discharge an employee when it had the unilateral right to discharge the employee from the particular task at hand as well as the right to discharge the employee from working for that employer); *see Preston*, 227 Ga. App. at 451-52 (1) ("Even if [the general master] retained some authority to remove [employee] from his position [with the special master], the power of the general master to reassign or discharge a borrowed servant is irrelevant to the servant's employment status with the special master."); *Staffing Res., Inc. v. Nash*, 218 Ga. App. 525, 525-27 (1) (462 SE2d 401) (1995) (finding that the third prong of the borrowed-servant rule was satisfied when lending employer had only cursory contact with the employee and no knowledge of the specific job duties assigned to him, but had terminated employees when a customer of the temporary employer expressed dissatisfaction); *Jarrard*, 164 Ga. App. at 340 (1) (finding that, even when a general master retained the right to remove the loaned employee from the project and assign him to any other work, the special master had the exclusive right to discharge the employee for unsatisfactory performance); *see also Berry v. Davis Feed & Seed, Inc.*, 237 Ga. App. 768, 770 (516 SE2d 812) (1999) (finding that, at the time of the injury, it was undisputed that employees of the general master were under the exclusive control and direction of the special master and the general master could not have discharged its employees from their temporary work assignment because he was not even on the premises); *Stephens*, 189 Ga. App. at 7 (rejecting appellant's "contention that because [the general master] had the sole right to discharge her from its employ,

11

Herrera submits that our decision in *Preston* is an "outlier," in which we "plainly misread" the Supreme Court's decision in *Six Flags*, citing to numerous cases that she claims are in conflict with *Preston*. In particular, she challenges our determination in *Preston* that the *Six Flags* Court "defined the special master's 'exclusive right to discharge' the borrowed servant as the power to *unilaterally* discharge from working on the specific task assigned by the special master and from working for the special master."[21] However, in *Six Flags*, the Supreme Court expressly stated, "[a]s for the third test, it is undisputed that Six Flags had the exclusive right to discharge [the employee], that is, that Six Flags could unilaterally discharge [him] from working on the stuck Mind Bender cars and from working at Six Flags."[22] Thus, contrary to the Herrera's argument, *Preston* is not in conflict with *Six Flags* or other binding precedent on the borrowed-servant doctrine, but is in complete accord with this body of jurisprudence. Indeed, every decision relied upon by Herrera is distinguishable from this case, *Preston*, and *Six Flags* because in each of those opinions there was evidence that the special master had *no right*, unilateral

the third prong of the test was not satisfied").

[21] *Preston*, 227 Ga. App. at 452 (1).

[22] *Six Flags Over Ga., Inc.*, 247 Ga. at 377 (1).

12

or otherwise, to discharge the borrowed employee from his particular work, that the general master retained some control and direction over the employee during his assignment with the special master, or that the general master *alone* could discharge the employee.[23] Suffice it to say, this case does not fall into any of these categories.

---

[23] *See, e.g. Cooper/T.Smith Stevedoring Co. v. Ga. by & through its Dep't of Admin. Servs.*, 317 Ga. App. 362, 368-69 (3) (a) (730 SE2d 168) (2012) (finding the governing contract did not explicitly set forth any of the requirements of the borrowed-servant doctrine, and thus, whether the borrowed-servant test was satisfied was a question of fact for the jury); *see Alta Refrigeration, Inc.,* 301 Ga. App. at 745-46 (1) (finding that none of the requirements of the borrowed-servant rule were satisfied and evidence showed that *only the general master* could remove the employee from his assigned task ); *Howard*, 239 Ga. App. at 680 (2) (finding that the third prong of the borrowed-servant rule was not satisfied and expressly distinguishing *Preston* on the basis that, in *Preston*, "undisputed testimony was presented that borrowing employer had unilateral authority to discharge the employee from the particular work he was engaged in"); *S. Ry. Co. v. Hand*, 216 Ga. App. 370, 370-71 (1) (454 SE2d 217) (1995) (finding that the borrowed-servant rule was not satisfied when borrowed employee was working for the special master "as part of his job" with the general master and there was insufficient evidence to show that the special master had the exclusive right to discharge him or that the general master had no control or direction over the employee on the occasion at issue); *Shannon v. Combustion Engineering, Inc.*, 188 Ga. App. 239, 239 (1) (372 SE2d 818) (1988) (finding, without further explanation, that the borrowed-servant rule did not apply when there was evidence that the special master had control and supervision over the borrowed employee on the occasion in question, but no evidence established that the special master had the exclusive right to discharge the employee or put another in his place); *Jones v. Tingue, Brown & Co.*, 171 Ga. App. 597, 598-99 (1), (2) (320 SE2d 587) (1984) (finding that the requirements of borrowed-servant rule were not met as a matter of law when, *inter alia*, there was evidence that the general master retained control over its employee's performance and that *only the general master* had the right to discharge the employee); *Freeman v. Pumpco, Inc.*, 167 Ga. App. 312, 313

13

2. Given our holding in Division 1, *supra*, we need not address the City's argument that the trial court erred in failing to apply the rules of contract construction to interpret the Agreement.

For all of the foregoing reasons, we reverse the trial court's denial of the City's motion for summary judgment.

*Judgment reversed. Doyle, P. J., and Miller, J., concur.*

---

(306 SE2d 385) (1983) (finding that it could not be determined, as a matter of law, that the borrowed-servant rule applied when there was evidence that the special master only had supervision and control over its own employees, that it did not have the duty or responsibility to fire an employee of the general master, and that it could not assign a borrowed employee to different work); *Charter Builders, Inc. v. Sima Crane Service, Inc.*, 150 Ga. App. 100, 103 (256 SE2d 678) (1979) (evidence was insufficient, at the summary-judgment stage, to establish that the borrowed-servant rule applied when the general master retained the right to control the employee on the occasion at issue and that, if the special master wanted to remove a borrowed employee from the job, it would have to call the general master to ask that the employee be removed); *Flowers v. U. S. S. Agri-Chemicals*, 139 Ga. App. 430, 432 (2) (228 SE2d 392) (1976) (finding that the third prong of the borrowed-servant rule was not satisfied when purported special master did not have complete control and direction over borrowed employee, the general master retained some control, and *general master alone* had the right, actual or implied, to put the borrowed employee to other work); *see also Brown v. Smith*, 86 Ga. 274, 274 (12 SE 411) (1890) ("The real test by which to determine whether a person is acting as the servant of another is to ascertain whether at the time when the injury was inflicted he was subject to such person's orders and control, and was liable to be discharged by him for disobedience of orders or misconduct.") (punctuation and citation omitted).

14