A95A1683, A95A1684. STAFFING RESOURCES, INC. v. NASH; and vice versa.

(462 SE2d 401)

BLACKBURN, Judge.

On or about August 26, 1991, John Nash was injured when the forklift he was operating was struck by another forklift operated by Chris Hill. The accident occurred at a warehouse owned and operated by the Komatsu Dresser Company (Komatsu). Hill was a temporary laborer that Staffing Resources, Inc. (Staffing), a temporary employment agency, had supplied to Komatsu. On August 25, 1993, one day before the statute of limitation lapsed, Nash filed suit against Staffing alleging that he had been injured as a result of Hill's negligence and that Staffing was liable on a theory of respondeat superior.

Subsequently, on December 9, 1994, Nash amended his complaint to state a claim against Staffing for negligent hiring, alleging that it supplied Hill to Komatsu with the knowledge that Hill had no training or experience in operating a forklift even though such skills might be required for his work at Komatsu.

Staffing moved for summary judgment first alleging that Hill was a "borrowed" servant of Komatsu when the accident occurred, and, consequently, Staffing was not liable for Hill's alleged negligence under the doctrine of respondeat superior. Staffing further moved that Nash's claim of negligent hiring was barred by the statute of limitation as it concerned "new facts" that would prevent it from "relating back" to the original complaint. The trial court denied Staffing's motion on the respondeat superior argument and granted it on the statute of limitation basis. Both sides appealed.

The evidence reveals that Hill had only cursory contact with Staffing. Staffing exercised no supervisory control over Hill and had no knowledge of the specific job duties Komatsu had assigned to him.

1. Staffing claims that Hill was Komatsu's "borrowed servant," relieving Staffing of any derivative liability for Hill's negligence. "One widely recognized exception to the doctrine of respondeat superior is the 'borrowed servant' rule. If a master lends his servants to another then the master is not responsible for any negligence of the servant committed within the scope of his employment by the other. Since vicarious liability for the acts of servants depends upon the master's

right of control over the acts of the servants, it is only logical that where employees are doing one job for two masters . . . both employers cannot have control over the actions of the employee at the same time." *Hoffman v. Wells*, 260 Ga. 588, 589-590 (397 SE2d 696) (1990).

In order to determine when a loaned employee is considered a borrowed servant, three factors must be demonstrated: (1) The borrowing employer must have complete control and direction over the employee for the occasion; (2) the lending employer must have no such control and (3) the borrowing employer must have the exclusive right to discharge the employee. *U. S. Fidelity &c. Co. v. Forrester*, 230 Ga. 182, 183 (196 SE2d 133) (1973). The parties focus on the third factor.

Nash asserts that a disputed fact exists about whether Komatsu had the exclusive right to terminate Hill. Reviewing this testimony in a light most favorable to the nonmovant, it is apparent that if Komatsu found a temporary employee's job performance to be unsatisfactory, it had the power to end that temporary employee's assignment with Komatsu although Komatsu would "coordinate" the release with the temporary agency which supplied the employee. As one Komatsu manager put it, the actual "hiring and firing" duties were left to the temporary agency. Further, a Staffing representative testified that Staffing sometimes terminated its temporary employees because of the dissatisfaction expressed by a customer such as Komatsu. On the basis of this testimony, Nash argues that the authority to dismiss a temporary employee was jointly exercised by both Komatsu and Staffing and, thus, could not be exclusively vested in Komatsu. We disagree.

A similar issue was addressed by this Court in *Stephens v. Oates*, 189 Ga. App. 6 (374 SE2d 821) (1988); see also *Sheets v. J. H. Heath Tree Svc.*, 193 Ga. App. 278 (387 SE2d 155) (1989). In *Stephens*, a temporary employee sued her temporary employer after she was injured by another employee. The temporary employer subsequently moved for summary judgment on the ground that workers' compensation benefits were the temporary employee's exclusive remedy because she was a borrowed servant at the time of her injury. In evaluating the third requirement of the borrowed servant test, it was held that the temporary employer's exclusive power to discharge must relate only to the temporary assignment.

In the present matter, while it is clear that Staffing may have helped implement a dismissal, the decision to terminate a temporary worker from a temporary assignment belonged to Komatsu. Thus, Hill meets the third requirement and should be considered a borrowed servant of Komatsu. Accordingly, Nash's claim to hold Staffing derivatively liable for Hill's alleged negligence is without basis.

In light of the above, we reverse the decision of the trial court

denying Staffing summary judgment on the issue of respondeat superior.

As the only error enumerated by Staffing concerned its liability by virtue of the doctrine of respondeat superior, we make no findings as to whether Nash was Hill's fellow servant or whether the exclusive remedy of workers' compensation applies in this case.

2. In his cross-appeal, Nash asserts that the trial court erred in determining that his claim for negligent hiring was barred by the statute of limitation. OCGA § 9-11-15 (c) outlines the test for determining when a late-filed claim will escape the bar of the statute of limitation: "Whenever the claim or defense asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Thus an amendment asserting a new claim will relate back so long as the newly asserted claim arises out of the same set of facts alleged in the original complaint. Narrow readings of OCGA § 9-11-15 (c)'s requirements are discouraged as they defeat the purposes for which the statute was designed. *Samples v. Barnes Group,* 175 Ga. App. 253, 255 (333 SE2d 147) (1985).

In *A. H. Robins Co. v. Sullivan,* 136 Ga. App. 533 (221 SE2d 697) (1975) the initial complaint asserted medical malpractice for the improper placement of an intrauterine contraceptive device. That complaint was later amended to include a claim that the device was defectively manufactured. While the claims of medical malpractice and products liability were vastly different, it was determined, applying the test of OCGA § 9-11-15 (c), that these two claims arose out of the same set of facts. "[I]t cannot be disputed that [the manufacturer's] alleged negligence (manufacture of the defective device) arose out of the same occurrence alleged in the original complaint (installation of the same device). See *Sam Finley, Inc. v. Interstate &c. Ins. Co.,* 135 Ga. App. 14 (2) (217 SE2d 358) [(1975)]." Id. at 535.

Like *Sullivan,* the amended complaint in the present case may have concerned specific facts not addressed in the original complaint, however, the original complaint provided Staffing with "fair notice . . . of the general fact situation" out of which the amended pleading arose. *Samples,* supra at 255. Thus, the amended complaint met the requirements of OCGA § 9-11-15 (c) such that it relates back to the original complaint, and the trial court erred in determining that the negligent hiring claim was time-barred.

3. This Court does not address herein whether or not a factual basis exists for the negligent hiring claim. While this issue was raised by Staffing, it was never ruled upon by the trial court.

*Judgments reversed in Case Nos. A95A1683 and A95A1684. McMurray, P. J., and Andrews, J., concur.*

DECIDED AUGUST 28, 1995 —
RECONSIDERATION DENIED SEPTEMBER 14, 1995.

*Van Gerpen, Harris & Parson, Earl J. Van Gerpen, Frank P. Harris*, for appellant.
*Curtis R. Richardson*, for appellee.