A97A0776. PRESTON v. GEORGIA POWER COMPANY et al.
A97A0777. INSURANCE COMPANY OF NORTH AMERICA
v. GEORGIA POWER COMPANY et al.
(489 SE2d 573)

SMITH, Judge.

While cleaning a railroad freight car, Roy Preston was grievously injured by contact with a high-voltage power line. He sought damages from Georgia Power Company, the owner of the power line, and Ashland Chemical Company, for which he was working at the time of the incident. Insurance Company of North America ("INA") intervened seeking to enforce its subrogation rights under OCGA § 34-9-11.1 (b) for its payment of workers' compensation benefits to Preston.[1]

The trial court granted summary judgment to Ashland and Georgia Power. Preston originally appealed to the Supreme Court because he contended the constitutionality of the High-voltage Safety Act, OCGA §§ 46-3-30 through 46-3-40, was called into question. Ashland moved to transfer the appeals to this Court, and Preston opposed the transfer on the ground that a constitutional issue had been raised and ruled upon by the trial court in an earlier order, as to which the Supreme Court had refused interlocutory review. The Supreme Court granted Ashland's motion to transfer the appeals to this Court on the ground that the trial court decided no constitutional issue in the order appealed from. See *Raskin v. Wallace*, 215 Ga. App. 603, 604 (1) (451 SE2d 485) (1994).

The trial court granted summary judgment to Ashland on the

---

[1] In its appeal, Case No. A97A0777, INA has adopted and incorporated by reference Preston's briefs.

ground of the workers' compensation tort bar and to Georgia Power on the ground of lack of proximate cause. Because Preston was a "borrowed servant" of Ashland at the time of his injury, and because Georgia Power was protected by Ashland's lack of notice of a hazardous activity under the High-voltage Safety Act, we affirm.

The evidence, construed in Preston's favor, shows the following: Ashland received bulk chemicals via railcar on a siding between its plant and a power line running parallel to the plant wall and the siding. Occasionally, chemicals became clogged in the hoppers of the railcar, and Ashland employees were instructed to clean out the railcar from the top. It is undisputed that for many years Ashland's accepted method of cleaning railcars was to lower an employee into the car in a safety harness with a broom or shovel. In May 1992, Ashland's environmental health and safety department recommended a change in this method because of the potential danger of lowering an employee into a confined space with chemical dust. Some time after this recommendation, Ashland began using a shovel or spader on a 20- to 22-foot metal pole so that employees could stand on top of the railcars to remove the residue. Ashland employees used this spader "long-ways," with the pole parallel to the length of the railcar, because they were aware they could be hurt by the power lines.

On June 22, 1993, Preston was working for Ashland as a temporary employee assigned by ProTemps, a temporary labor agency. Preston was given the spader and instructed to clean out a railcar. This violated Ashland's policy that no temporary employees were to be allowed on top of railcars. Preston was not given any instructions in the use of the spader. Although he testified he did not see the power lines, he agreed there was nothing to prevent his seeing them and he knew it would be dangerous to touch power wires with a pole. While standing on top of the railcar, he swung the pole at right angles to the track and contacted the power lines, suffering severe personal injury. The power lines were between 26 and 28 feet above the ground and approximately 11 feet to one side of the railroad track; the diagonal clearance was measured at approximately 13 feet from the top of the railcar.

Ashland employees testified that they knew of no personal injury from the power lines on Ashland's premises before Preston was hurt. No evidence was presented that Georgia Power knew Ashland had begun using a 20- to 22-foot metal pole in the vicinity of existing power lines. No witness testified that Georgia Power personnel were present at Ashland on previous occasions when railcars were on the track, when unloading operations were taking place, or when the spader was being used. Georgia Power was never notified that the spader would be used or that work was to be performed within ten feet of its lines.

1. With respect to Preston's claims against Ashland Chemical, the only issue is the application of the workers' compensation tort bar, OCGA § 34-9-11 (a). At the time of his injury, Preston was a temporary laborer assigned by his employer, ProTemps, to Ashland Chemical. Ashland contends that it is protected by the statutory bar because Preston was its borrowed servant at the time of his injury. Ashland presented testimony that Preston was under its exclusive supervision and control while working at its facility with respect to the work performed by Preston and its power to discharge him.

Preston, however, points to the testimony of an Ashland "compliance specialist" or safety officer agreeing that he "wouldn't have a problem with" ProTemps substituting another ProTemps worker in Preston's place, and the testimony of an Ashland manager that ProTemps would do the actual firing if Ashland became dissatisfied with Preston. This testimony, he contends, forestalls summary judgment on the issue of whether he was a borrowed servant at the time of his injury.

"[I]n order for an employee to be a borrowed employee, the evidence must show that (1) the special master had complete control and direction of the servant for the occasion; (2) the general master had no such control; and (3) the special master had the exclusive right to discharge the servant." (Citations and punctuation omitted.) *Six Flags Over Ga. v. Hill*, 247 Ga. 375, 377 (1) (276 SE2d 572) (1981). "[A]ll three prongs of the test must focus on 'the occasion when the injury occurred' rather than the work relationship in general." *Stephens v. Oates*, 189 Ga. App. 6, 7 (1) (374 SE2d 821) (1988). Because a temporary labor service "is in the very business of temporarily 'loaning' its employees to others[,] [cits.]," *Sheets v. J. H. Heath Tree Svc.*, 193 Ga. App. 278, 279 (387 SE2d 155) (1989), this Court has repeatedly considered the employment status of such agency employees. See, e.g., *Staffing Resources v. Nash*, 218 Ga. App. 525, 526 (462 SE2d 401) (1995); *Sheets*, supra; *Stephens*, supra. The crucial issue here is whether the extent of control retained by ProTemps over Preston is sufficient to void the third part of the "borrowed servant" test: the exclusive right to discharge.

The Ashland manager's testimony that ProTemps would do the actual firing at the request of Ashland does not show a nonexclusive power to discharge; that theory was expressly addressed and rejected in *Nash*, supra at 526. Here, we must decide whether the Ashland employee's testimony that he would not object to ProTemps's removing Preston and substituting another temporary worker in his place deprives Ashland of its exclusive power to discharge as described in *Nash*, *Sheets*, and *Stephens*. We conclude that it does not.

Even if ProTemps retained some authority to remove Preston from his position at Ashland, the power of the general master to reas-

sign or discharge a borrowed servant is irrelevant to the servant's employment status with the special master. In *Six Flags*, supra, the Supreme Court defined the special master's "exclusive right to discharge" the borrowed servant as the power to *unilaterally* discharge from working on the specific task assigned by the special master and from working for the special master. *Six Flags*, supra at 378 (1).

In *Stephens*, supra, relying on the holding in *Six Flags*, this Court reiterated that the focus of the borrowed servant test must be the special master's control at the time of the injury, rather than generally, and that this is also true of "the rights of the special master to discharge the servant and to put another in his place." (Citation and punctuation omitted.) *Stephens*, supra at 7-8. With respect to Preston, ProTemps "obviously retained some control over him, including the right to terminate his employment as its 'lendable servant.' However, once there was an assignment of appellant to a special master, [ProTemps] relinquished that control during the existence of the 'borrowed servant' relationship." *Sheets*, supra at 279.

This result is consistent with our earlier holding in *Jarrard v. Doyle*, 164 Ga. App. 339, 340 (297 SE2d 301) (1982). In *Jarrard*, a hotel employee was temporarily assigned to assist a contractor in performing repair work on the hotel and therefore became a borrowed servant of the contractor. Even though the hotel retained some authority over its employee and "could have taken him off the project and assigned him to other work at any time," id. at 340, the contractor, as the special master, "clearly had the exclusive right to control and direct the plaintiff's work on the particular task in question, as well as to dismiss him from that task for unsatisfactory performance" because "the right to discharge that the special master must have means the right to discharge the servant from that particular work." (Citations and punctuation omitted.) Id. at 340 (1).

Undisputed testimony was presented that Ashland had unilateral authority to discharge Preston from the work assigned to him; on the morning in question it removed Preston from his task of labeling cans and directed him to clean the railcar. It could do so without the permission of ProTemps; a ProTemps officer, by affidavit, stated that ProTemps had no authority to countermand such an order. Because Ashland had this unilateral right to discharge Preston from the particular work he was engaged in at the time of his injury, the trial court did not err in holding that Preston was a borrowed servant and that his claim was barred by OCGA § 34-9-11 (a).

2. Preston also complains of the trial court's grant of summary judgment in favor of Georgia Power on the ground of lack of proximate cause. We need not address Preston's contention because summary judgment was proper under OCGA § 46-3-39 (a); Ashland and Preston failed to notify Georgia Power of work taking place within

ten feet of its line.

We cannot, as the dissent asserts, attempt to examine the motives of the Supreme Court in first denying an interlocutory application on the constitutionality of the High-voltage Safety Act and then transferring these appeals to this Court. The dissent is incorrect in its conclusion that the transfer of these appeals to this Court is dispositive of any constitutional issue or circumscribes our authority to rule on an issue that was raised and argued below. See *Atlanta Independent School System v. Lane*, 266 Ga. 657 (469 SE2d 22) (1996) (transfer of case to Court of Appeals not dispositive of constitutional issues). It is also incorrect in its assertion that Preston will be unable to raise this issue at a later time. While Preston's interlocutory application to the Supreme Court on the constitutional issue was denied, he will have yet another opportunity to raise it on certiorari.

Under the authority of *Southeast Ceramics v. Klem*, 246 Ga. 294 (1) (271 SE2d 199) (1980), the Supreme Court had the power to review the constitutional issue raised in the Court's earlier interlocutory order when these appeals were filed. It apparently has declined to do so by transferring the appeals to this Court. We note, however, that the constitutional issue raised by Preston appears irrelevant. Preston's sole constitutional ground asserts that the High-voltage Safety Act is unreasonable, arbitrary, and capricious because it fails to require the utility to identify which of its lines are high-voltage lines. But a filed and recorded public document in which Ashland granted an electrical power easement to Georgia Power clearly identifies the voltage of the power lines and demonstrates that *Ashland* had actual notice of the high voltage. In light of the evidence that Ashland was required to give notice to Georgia Power and was aware of the high voltage carried by the power lines, Preston's lack of knowledge is immaterial to the application of OCGA § 46-3-39 (a).

Whatever the reasons for the transfer, the applicability of the High-voltage Safety Act was raised and fully briefed below and is before us now. We cannot decline to decide this issue by speculating on the reasons for the Supreme Court's transfer as specifically forbidden by that Court in *Lane*. We therefore consider the applicability of the High-voltage Safety Act to this case.[2]

Several interlocking provisions of the High-voltage Safety Act set out the duties of persons responsible for performing work near

---

[2] Although we do not reach the issue, the dissent is also incorrect in its adoption of Preston's claim that he was "blind-sided" by the trial court's grant of summary judgment on the issue of proximate cause. While the parties' initial briefs on summary judgment focused on the High-voltage Safety Act, issues of negligence and proximate cause were fully briefed and litigated below in supplemental briefs by both parties.

high-voltage lines.[3] OCGA § 46-3-33 provides in pertinent part: "No person, firm, or corporation shall commence any work as defined in paragraph (6) of Code Section 46-3-32 if at any time any person or any item specified in paragraph (6) of Code Section 46-3-32 may be brought within ten feet of any high-voltage line unless and until: (1) The person responsible for the work has given the notice required by Code Section 46-3-34." OCGA § 46-3-34 (b) provides: "Where work is to be done, the person responsible for such work shall give notice to the utilities protection center during its regular business hours at least 72 hours, excluding weekends and holidays, prior to commencing such work."

The High-voltage Safety Act provides a restriction on liability in OCGA § 46-3-39: "(a) The owner or operator of high-voltage lines shall not be liable for damage or loss to person or property resulting from work within ten feet of high-voltage lines unless notice has been given as required by Code Section 46-3-34 and the owner or operator of the high-voltage line has failed to comply with the provisions of Code Section 46-3-33. (b) Except as provided in subsection (a) of this Code section, nothing in this part shall be construed or applied so as to limit or reduce the duty or degree of care applicable to owners or operators of high-voltage lines with respect to damage or loss to person or property."

In refusing to grant summary judgment to Georgia Power on the basis of OCGA § 46-3-39 (a), the trial court relied upon a number of decisions that predate extensive and substantial amendments to the High-voltage Safety Act. Ga. L. 1992, p. 2141, § 1. Before the 1992 amendment, the Supreme Court of Georgia construed the High-voltage Safety Act to hold that even if the Act were violated, the utility nevertheless must show that the lines were properly located and maintained in order to bar recovery. *Malvarez v. Ga. Power Co.*, 250 Ga. 568, 569 (300 SE2d 145) (1983). In so holding, the Supreme Court pointed to the language of former OCGA § 46-3-38 (Code Ann. § 34B-209), which provided in its entirety: " 'Nothing in this part shall be construed or applied so as to limit or reduce the duty or degree of care applicable to owners or operators of high-voltage lines with respect to damage or loss to person or property.' [Cit.]" Id. at 569. *Brown v. Southern Bell Tel. &c. Co.*, 209 Ga. App. 99 (432 SE2d 675) (1993), relied upon by the trial court, expressly stated that the earlier version of the High-voltage Safety Act was applicable in that

---

[3] " 'Person responsible for the work' means the person actually doing the work as well as any person, firm, or corporation who employs and carries on his payroll any person actually doing the work or who employs a subcontractor who actually does the work." OCGA § 46-3-32 (3). " 'Work' means the physical act of performing or preparing to perform any activity under, over, by, or near high-voltage lines." OCGA § 46-3-32 (6).

case. Id. at 100. While the date of the incident in *Leonardson v. Ga. Power Co.*, 210 Ga. App. 574, 575, n. 1 (436 SE2d 690) (1993), is not revealed, the decision simply relies upon *Malvarez* and does not note the 1992 amendment.

The language of the former Act provided no express restriction on liability like that now codified in OCGA § 46-3-39 (a). It simply forbade the performance of certain work near high-voltage lines without notification and without the completion of certain safety measures. See former OCGA §§ 46-3-31 (Code Ann. § 34B-202); 46-3-32 (Code Ann. § 34B-203); 46-3-33 (Code Ann. § 34B-205). On this basis, *Malvarez* and its progeny held that the failure to obey these provisions of the Act did not of itself relieve the utility from liability. *Malvarez*, supra at 569.

The 1992 amendment of the High-voltage Safety Act revised the Act in large part and significantly altered the language relied upon in *Malvarez*. The amendment for the first time provided an explicit restriction on liability and added language that expressly exempts that restriction from the provision that the power line owner's or operator's duty or degree of care is not limited or reduced by the Act. See OCGA § 46-3-39 (a), (b).

Under the rules of statutory construction, we must construe all related statutes together, give meaning to each part of the statute, and avoid constructions that result in surplusage and meaningless language. *City of Buchanan v. Pope*, 222 Ga. App. 716, 717 (1) (476 SE2d 53) (1996). Moreover, we must presume that at the time the 1992 amendment was enacted the legislature was aware of the existing law and the *Malvarez* decision. *Hart v. Owens-Illinois, Inc.*, 250 Ga. 397, 400 (297 SE2d 462) (1982). The legislature expressly revised the statute to avoid the result in *Malvarez*; we must conclude that they intended to do so. This conclusion is consistent with this Court's recent holding in *Callaway v. Crown Crafts*, 223 Ga. App. 297, 299 (3) (477 SE2d 435) (1996) (physical precedent only),[4] in which we applied the High-voltage Safety Act, as amended, to relieve the owner of a high-voltage line from liability.

A grant of summary judgment must be affirmed if it is right for any reason. *Malaga Mgmt. Co. v. John Deere Co.*, 208 Ga. App. 764, 767 (5) (431 SE2d 746) (1993); see *Precise v. City of Rossville*, 261 Ga. 210, 211 (3) (403 SE2d 47) (1991). Because Georgia Power was protected under OCGA § 46-3-39 (a) by Preston's and Ashland's failure to give the appropriate notice, the trial court correctly granted summary judgment in favor of Georgia Power.

---

[4] The special concurrence in *Callaway* incorrectly applied *Malvarez*, supra, and its progeny without reference to the 1992 revisions of the Act. *Callaway*, supra at 300 (2).

*Judgment affirmed. Andrews, C. J., Birdsong, P. J., and Eldridge, J., concur. Beasley, J., concurs specially. Ruffin, J., concurs in the judgment only. McMurray, P. J., dissents.*

BEASLEY, Judge, concurring specially.

I concur fully in Division 1, but I do not concur fully in Division 2.

For one thing, I do not agree that Preston will have an opportunity to pursue his claim of unconstitutionality of the High-voltage Safety Act on petition for certiorari. If the Supreme Court grants his petition, should he file one, its review will be limited to this Court's rulings, as it will be this Court's action and not that of the superior court which will be subject to review. As stated in *Daniels v. State*, 248 Ga. 591, n. 1, 592 (285 SE2d 516) (1981), when a petition for certiorari is granted and the case is before the Supreme Court, "in its discretion [that] court can consider any matter presented to or decided by the Court of Appeals." *Southeast Ceramics v. Klem*, 246 Ga. 294 (271 SE2d 199) (1980) is an illustration. The Constitution provides that "The Supreme Court may review by certiorari cases in the Court of Appeals which are of gravity or great public importance." Ga. Const. 1983, Art. VI, Sec. VI, Par. V. The scope of certiorari, then, is comprised of matters presented to or decided by the Court of Appeals.

This Court cannot decide the constitutionality vel non of a statute (Ga. Const. 1983, Art. VI, Sec. VI, Par. II (1)), and the matter was not and, for the jurisdictional reason, could not be presented to us. In fact, the issue was presented to the Supreme Court by appellant, but it transferred the case to the Court of Appeals. Even if, as a matter of jurisdictional jurisprudence, the Supreme Court could reach around the Court of Appeals decision and take up on certiorari an issue decided only by the superior court and outside the competency of the Court of Appeals, it is unrealistic to propose that it would do so. Had the Supreme Court viewed the constitutionality issue properly before it on the appeal taken directly to it by appellant, it would have been compelled by the constitution to accept the case because of its exclusive jurisdiction of such matters. Ga. Const. 1983, Art. VI, Sec. VI, Par. II (1). Instead, it transferred the appeal to this Court. Preston's claim in this regard has effectively been foreclosed. The trial court denied plaintiff Preston's motion to strike Georgia Power Company's defense founded on the Act, which motion was based in part on the charge that the Act was unconstitutional. Preston argued that it violated his rights to equal protection and due process. Although he referred to both the federal and the state constitutions, he did so generally and without any citation to specific provisions. The trial court did not expressly differentiate in its ruling either, although it ruled

that Preston had no standing to complain of the lack of equal protection, and it ruled that federally protected due process was not contravened by the Act. The court granted a certificate of immediate review at plaintiff's request, but the Supreme Court denied interlocutory appeal. It did not explain its denial.

The Supreme Court has now transferred to this Court Preston's appeal from the order granting both Ashland's and Georgia Power Company's motions for summary judgment. In that order, the trial court noted: "Plaintiff also raises constitutional challenges to the High Voltage Safety Act on equal protection and due process grounds. This court has already ruled adversely to plaintiff on these constitutional issues in the order filed November 17, 1994." Thus, the trial court reiterated and confirmed its ruling on constitutionality and made it part of the summary judgment order as well. That ruling was necessary to its ruling on the remaining grounds, which depended upon an application of the Act; had it been unconstitutional, Georgia Power Company would not have been entitled to summary judgment.

This Court could not have addressed the issue of constitutionality, for lack of subject matter jurisdiction, and the transfer to this Court merely means that the Supreme Court has discerned some reason it need not exercise its exclusive jurisdiction over the constitutionality issue. In the words used in *Atlanta Independent School System v. Lane*, 266 Ga. 657 (1) (469 SE2d 22) (1996), "[the] transfer merely represents [the Supreme Court's] determination that [this] was not a case involving a constitutional issue over which [it] had exclusive jurisdiction." Id. This does not mean that the constitutional issue does not have merit. Id. at 658.

The Supreme Court's order states that the case is transferred to this Court "[b]ecause the issue on which the trial court granted summary judgment . . . does not fall within the jurisdiction of this Court." The constitutionality issue falls by the wayside.

On another subject, I must point out that I do concur in footnote 4. In 1992, the general liability of owners and operators of high-voltage lines was eliminated in the ten-foot circumstances described in OCGA § 46-3-39 (a). Because of the 1992 amendments to the High-voltage Safety Act, the liability for injury or damage caused by improperly located or improperly maintained lines which is discussed in *Malvarez v. Ga. Power Co.*, 250 Ga. 568 (300 SE2d 145) (1983), applies only to instances outside the exception created in subsection (a). See OCGA § 46-3-39 (b). The date of the accident in *Callaway v. Crown Crafts*, 223 Ga. App. 297 (477 SE2d 435) (1996) was after the effective date of the 1992 amendments.

MCMURRAY, Presiding Judge, dissenting.

I respectfully dissent as to Division 2 of the majority opinion

because, in my view, a fair and sensible reading of the Supreme Court's order transferring the cases sub judice to the Court of Appeals precludes this Court's review of any issue concerning application of the 1992 amendment to Georgia's High-voltage Safety Act, OCGA § 46-3-39 (a). I believe the unique procedural circumstances in these cases (both in the trial court and on appeal) take the trial court's summary judgment order outside the "right for any reason" rule and focuses this Court on the sole basis of the trial court's order granting summary judgment to Georgia Power Company, i.e., proximate cause. And as to this issue, I would vacate that part of the trial court's judgment granting summary judgment to Georgia Power and remand the case to the trial court, because Roy Preston's attorneys were unfairly blind-sided by the proximate cause issue while defending the sole basis of Georgia Power's motion for summary judgment, "whether the action against [Georgia Power] is barred by the provisions of Georgia's High-voltage Safety Act (OCGA § 46-3-30), which was amended in 1992."

Although the trial court rejected Roy Preston's ·constitutional challenge to OCGA § 46-3-39 (a) in an earlier interlocutory order, the trial court concluded on summary judgment that this 1992 amendment to Georgia's High-voltage Safety Act does not preclude Preston's claims against Georgia Power. The trial court, nonetheless, granted summary judgment based on a finding that Georgia Power's noncompliance with the National Electric Safety Code was not a proximate cause of Roy Preston's injuries. This procedural posture is the basis for the following transfer order entered by the Supreme Court of Georgia: "Because the issue on which the trial court granted summary judgment in these cases does not fall within the jurisdiction of this Court, the appeals are hereby transferred to the Court of Appeals. All the Justices concur, except Sears, J., who dissents."

I believe the Supreme Court of Georgia's transfer order removes this Court's authority to apply OCGA § 46-3-39 (a) based on the "right for any reason" rule and focuses this Court's review to the sole basis of the trial court's order granting summary judgment to Georgia Power, i.e., proximate cause. Saying otherwise precludes Roy Preston's right to challenge the constitutional validity of the very Code subsection which is the basis of the majority's opinion, OCGA § 46-3-39 (a).[5] I, therefore, believe it appropriate to zero-in on the

---

[5] Even so, I cannot go along with the majority's view that OCGA § 46-3-39 (a) nullifies the Supreme Court's holding in *Malvarez v. Ga. Power Co.*, 250 Ga. 568 (300 SE2d 145),. "that lack of . . . notification [under OCGA § 46-3-34] is a bar to recovery only where the lines are 'otherwise properly located and maintained.' *Carden v. Ga. Power* [*Co.*, 231 Ga. 456, 457 (202 SE2d 55)]." *Malvarez v. Ga. Power Co.*, 250 Ga. 568, 569, supra. As Judge Beasley accurately pointed out in a special. concurrence in *Callaway v. Crown Crafts*, 223 Ga. App. 297, 300 (2) (477 SE2d 435), the *Malvarez* rule recognizes the distinct duty imposed upon one

trial court's ruling that Georgia Power's noncompliance with the National Electric Safety Code was not a proximate cause of Roy Preston's injuries.

" 'Although our law concerning motions for summary judgment allows a trial court to grant, sua sponte, a summary judgment, a trial court's authority to do so is not unlimited. The grant of summary judgment must be proper in all other respects. (Cit.) "This means that in addition to ensuring the record supports such a judgment, the trial court must ensure that the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment. (Cits.)" (Cit.)' *Hodge v. Sada Enterprises*, 217 Ga. App. 688, 690 (1) (458 SE2d 876) (1995). ' "The crucial point is to insure that the party against whom summary judgment is sought has had *a full and final opportunity* to meet and attempt to controvert the assertions against him." . . . (Cit.)' (Emphasis supplied.) *Famble v. State Farm Ins. Co.*, 204 Ga. App. 332, 336 (4) (419 SE2d 143) (1992)." *Aycock v. Calk*, 222 Ga. App. 763 (476 SE2d 274).

Georgia Power narrowed the scope of its motion for summary judgment with the following statement in its supporting brief: "The sole issue raised by Georgia Power's Motion for Summary Judgment is whether the action against it is barred by the provisions of Georgia's High-voltage Safety Act (OCGA § 46-3-30), which was amended in 1992. It is believed that this is the first occasion for the new Act to be construed." Although the trial court rejected this assertion, Roy Preston was blind-sided by the proximate cause issue in the trial court's summary judgment order. That is to say, Roy Preston's attorneys were simply not given a fair opportunity to address the fact-intensive proximate cause issue in the trial court because they were concentrating on Georgia Power's sole request for the trial court to resolve "whether the action against it is barred by the provisions of Georgia's High-voltage Safety Act (OCGA § 46-3-30), which was amended in 1992." Since proximate cause is a matter which should be resolved only in plain, palpable and undisputed cases where reasonable minds cannot differ as to the conclusions to be reached, *Wade v. Mitchell*, 206 Ga. App. 265, 268 (4) (424 SE2d 810), I believe Roy Preston's attorneys should be provided an opportunity to refine the

---

maintaining high-tension lines to " 'maintain them in such a manner and at such a location as not to injure persons who might reasonably be expected to come in contact with them.' (Emphasis omitted.) [*Buckner v. Colquitt EMC*, 206 Ga. App. 69, 70 (424 SE2d 299)]." *Callaway v. Crown Crafts*, 223 Ga. App. 297, 300 (2), supra. Since there is evidence in the cases sub judice that Georgia Power did not comply with this duty by failing to maintain its power line within standards prescribed by the National Electric Safety Code, I believe genuine issues of material fact remain as to Georgia Power's liability (breach of duty) for any such noncompliance.

evidentiary record and do whatever else is necessary to defend the proximate cause issue in the trial court. I stand firm in this view because, even though the evidentiary record in the case sub judice appears well developed, I believe it unfair to hit a person from the left (so to speak) when that person is defending a blow from the right.

I would vacate that part of the trial court's judgment granting summary judgment in favor of Georgia Power and remand the case to the trial court.

DECIDED JULY 16, 1997 — 

*Davis, Gregory, Christy & Forehand, Hardy Gregory, Jr., Gary C. Christy, David A. Forehand, Jr., Preyesh K. Maniklal, Hyatt & Hyatt, John M. Hyatt*, for appellant (case no. A97A0776).

*Drew, Eckl & Farnham, James M. Poe, Suzanne V. Sanders, James K. Creasy III*, for appellant (case no. A97A0777).

*Troutman Sanders, Robert L. Pennington, Scott A. Farrow*, for appellees.