**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 31, 2020**

# In the Court of Appeals of Georgia

A19A2279. SPROWSON v. VILLALOBOS.

Brown, Judge.

In this interlocutory appeal, Nelson A. Sprowson, II, contends that he was entitled to summary judgment in his favor based upon the exclusive remedy provision in the Workers' Compensation Act. See OCGA § 34-9-11. Specifically, that as the employee of a business using the services of a temporary help contracting firm, he cannot be held liable in tort to a temporary employee, who was injured while assigned to Sprowson's employer. For the reasons explained below, we agree and therefore reverse.

"On appeal from an order granting or denying summary judgment, we conduct a de novo review, construing the evidence and all reasonable conclusions and inferences drawn therefrom in the light most favorable to the nonmovant." (Citation

and punctuation omitted.) *Smith v. Camarena*, Ga. App. (1) (835 SE2d 712) (2019). So viewed, the record shows that on March 1, 2013, Waste Pro USA, Inc. ("Waste Pro USA") entered into a contract with True Blue Enterprises, Inc. d/b/a Labor Ready Southeast, Inc. ("Labor Ready"), under which Waste Pro USA compensated Labor Ready for providing temporary employees to perform work under the general or direct supervision of Waste Pro USA. On March 26, 2013, Labor Ready assigned Rudolfo Villalobos to work for Waste Pro of South Carolina, Inc. ("Waste Pro South Carolina") under the "exclusive supervision" of Waste Pro South Carolina. Villalobos was injured while working as a crew member on a sanitation truck owned by Waste Pro USA and driven by Sprowson, an employee of Waste Pro South Carolina. According to Villalobos' complaint, Sprowson negligently drove the truck in a manner that pinned him against a tree adjacent to the roadway. It is undisputed that Villalobos subsequently received workers' compensation benefits from Labor Ready for the injuries he sustained.

Villalobos filed a tort action against Waste Pro USA, Waste Pro South Carolina, Waste Pro of Georgia, Inc., and Sprowson. All of the defendants subsequently moved for summary judgment asserting that Villalobos' claims were barred by the exclusive remedy of the Workers' Compensation Act with regard to

2

Waste Pro USA, Waste Pro South Carolina, and Sprowson. Waste Pro of Georgia, Inc. asserted that it neither employed Sprowson nor owned or operated the truck driven by Sprowson. A State Court of Fulton County judge concluded "that OCGA § 34-9-11 does not bar Plaintiff from bringing a tort claim against Defendant Nelson A. Sprowson. However, OCGA § 34-9-11 does provide the exclusive remedy to the remaining Defendants."

Following the grant of summary judgment to the corporate defendants, the case was transferred to the State Court of Bryan County, where Sprowson resides. Sprowson attempted once more to obtain summary judgment in his favor in the new venue. Although the trial court denied his repeated attempts to obtain summary judgment in his favor, it granted him a certificate of immediate review, and this Court granted his application for an interlocutory appeal.

Sprowson contends that he is entitled to the benefit of the workers' compensation bar to tort liability pursuant to OCGA § 34-9-11 (a), which provides, in pertinent part:

> The rights and the remedies granted to an employee by this chapter shall exclude and be in place of all other rights and remedies of such employee . . . and all other civil liabilities whatsoever at common law or otherwise, on account of such injury, loss of service, or death . . . No

employee shall be deprived of any right to bring an action against any third-party tort-feasor, *other than an employee of the same employer* or any person who, pursuant to a contract or agreement with an employer, provides workers' compensation benefits to an injured employee, notwithstanding the fact that no common-law master-servant relationship or contract of employment exists between the injured employee and the person providing the benefits. . . .

(Emphasis supplied.) Id. Sprowson correctly asserts that if he is considered "an employee of the same employer" as Villalobos, he cannot be held liable in tort. See *Underwood v. Burt*, 185 Ga. App. 381 (364 SE2d 100) (1987).

In *Underwood*, this Court concluded that "[a] borrowed servant is, then, even though temporarily, 'an employee of the same employer' of any regular employee of the borrowing employer." Id. at 382 (applying borrowed servant analysis to determine application of OCGA § 34-9-11 (a)). In order for an employee to be a borrowed servant, "[t]he evidence must show that (1) the special master had complete control and direction of the servant for the occasion; (2) the general master had no such control; and (3) the special master had the exclusive right to discharge the servant." (Citation and punctuation omitted.) *Stephens v. Oates*, 189 Ga. App. 6, 7 (1) (374 SE2d 821) (1988). "All three prongs of the test must focus on the occasion when the injury occurred rather than the work relationship in general." (Citation and

4

punctuation omitted.) *Preston v. Ga. Power Co.*, 227 Ga. App. 449, 451 (1) (489 SE2D 573) (1997). With regard to the third prong of the test, the Supreme Court of Georgia has equated a special master's ability to "unilaterally discharge" a temporary employee with "the exclusive right to discharge" a servant. *Six Flags Over Ga. v. Hill*, 247 Ga. 375, 378 (1) (276 SE2d 572) (1981). See also *Garden City v. Herrera*, 329 Ga. App. 756, 760-762 (1) (766 SE2d 150) (2014); *Preston*, 227 Ga. App. at 452 (1).

In this case, Sprowson points to a contract between Labor Ready and Waste Pro USA, as well as deposition testimony and affidavits, to show that all three prongs of the borrowed servant test have been met as a matter of law. The contract provides, that Labor Ready "will be solely responsible for selecting, hiring, disciplining, reviewing, evaluating and terminating its employees performing Services hereunder[,]" and that Waste Pro USA

> understands that [Labor Ready] will not be providing supervision for its temporary employee(s) under the Agreement and that [Waste Pro USA] shall be responsible for adequately and reasonably supervising and directing the activities of [Labor Ready]'s temporary employees. . . . [Waste Pro USA] agrees to provide site specific safety orientation and training to all [Labor Ready] temporary employee(s) prior to the start of work.

5

The contract further provides:

> Although the right to hire, discharge or designate the classification of employees in accordance with its best judgment is reserved to [Labor Ready], [Labor Ready] shall nevertheless take responsible care in the selection of its work force, vendors and subcontractors, and procedures so as to maximize productivity, and to avoid slow-downs, work stoppages or other disruptive or concerted action of labor. . . .

> [Labor Ready] shall not assign to and shall remove from the performance of the Services any employee, person or party who in its opinion or in the opinion of [Waste Pro USA] fails to meet reasonable standards of experience, competency or comportment, or who by virtue of their behavior are or become a detriment to acceptable successful performance of the Services. [Labor Ready] shall ensure such person or party remains uninvolved with the Services. (Emphasis supplied.)

Villalobos testified in his deposition that "when [he was] working for Labor Ready, [he] underst[oo]d that if the company [he] was working for didn't like the work [he was] doing they could send [him] away" and that he was required to do whatever the driver, Sprowson, told him to do on the job. A Labor Ready vice president averred in an affidavit that Labor Ready assigned Villalobos to work for Waste Pro South Carolina under Waste Pro South Carolina's "exclusive supervision." This undisputed evidence shows that all three prongs of the borrowed servant test are met and that

6

Sprowson was "an employee of the same employer" as Villalobos under OCGA § 34-9-11 (a). Accordingly, he cannot be held liable in tort. See *Underwood*, 185 Ga. App. AT 382.

We find no merit in Villalobos' argument that a contrary result is required by the Supreme Court of Georgia's opinion in *Long v. Marvin M. Black Co.*, 250 Ga. 621 (300 SE2d 150) (1983). In *Long*, the Supreme Court of Georgia concluded that the immunity provided to an "employee of the same employer" does not apply when "the injured employee is an employee of a subcontractor which paid compensation and the alleged tortfeasor is an employee of the principal contractor." Id. at 623. The fact that the principal contractor was also the statutory employer[1] of the injured employee did not make the injured employee and the tortfeasor employed by the statutory employer "employees of the 'same employer' within the meaning of OCGA § 34-9-11 [a]." Id. In so holding, it noted that the General Assembly used the words 'the same

---

[1] "[T]he statutory employer doctrine permits liability for workers' compensation benefits to attach vicariously against someone other than an injured employee's employer. In return, the vicariously liable party is immune from tort liability for the injury suffered. [Cits.]" *Manning v. Georgia Power Co.*, 252 Ga. 404, 405 (314 SE2d 432) (1984). OCGA § 34-9-8 establishes that "[a] principal, intermediate, or subcontractor" can be held liable for worker's compensation benefits as a statutory employer of "any employee injured while in the employ of any of his subcontractors engaged upon the subject matter of the contract to the same extent as the immediate employer." Id.

7

employer,' not the words 'the immediate, intermediate or principal employer.'" Id. The Supreme Court did not address the application of the borrowed servant doctrine to determine whether the tortfeasor was the "employee of the same employer," as the facts before it clearly did not warrant application of the borrowed servant doctrine. Its holding can therefore be distinguished on this ground. See *Underwood*, supra, 185 Ga. App. at 382 (distinguishing *Long* in case applying borrowed servant doctrine because "the two employees involved in [*Long*] were not working under the control and supervision of the same employer when the accident occurred, but were merely working on the same construction project").

Likewise, Villalobos' argument based upon a 1995 statutory change does not persuade us to conclude otherwise. As we have previously explained,

> Georgia law provides that the exclusive remedy provision of OCGA § 34-9-11 prevents an injured employee or his/her dependents from bringing a tort claim against the employer, a statutory employer, or a co-employee. In 1995, the legislature extended this tort immunity to "businesses using the services of a temporary help contracting firm or an employee leasing company" provided that workers' compensation benefits are furnished by either: (1) a temporary help contracting firm or an employee leasing company; or (2) a business using the services of either such firm or company.

8

(Footnotes omitted.) *Sabellona v. Albert Painting, Inc.*, 303 Ga. App. 842, 843 (1) (695 SE2d 307) (2010). The Legislature also provided that "[a] temporary help contracting firm or an employee leasing company shall be deemed to be a statutory employer for the purposes of this chapter." OCGA § 34-9-11 (c). In Villalobos' view, if Sprowson's employer can now be considered Villalobos' statutory employer under OCGA § 34-9-11 (c), we cannot conclude that they are employees of the same employer and must apply the rationale of *Long*, supra. Villalobos points out that in *Underwood*, supra, we distinguished *Long*, in part, based upon the statement that immunity in *Long* was invoked "on the basis of the 'statutory employer' theory rather than the 'loaned employee' theory." *Underwood*, 185 Ga. App. at 382. We disagree with Villalobos' contention that because Waste Pro South Carolina can be considered his statutory employer, as well as Sprowson's direct employer, we should stop our analysis there, apply *Long*, and not determine whether he and Sprowson were employees of the same employer under the borrowed servant analysis. In *Long*, the *only* possible way for the tortfeasor and the injured party to be considered employees of the same employer was through the statutory employer analysis. Here, the borrowed servant doctrine provides an additional and alternative path for Sprowson

9

and Villalobos to be considered employees of the same employer and nothing in the legislative scheme or our case law precludes application of an alternative analysis.

Finally, the Supreme Court of Georgia's decision in *Pardue v. Ruiz*, 263 Ga. 146 (429 SE2d 912) (1993), is not implicated here. In that case, the Supreme Court of Georgia addressed whether a former general rule[2] that an injured employee could not hold a managerial employee of his direct employer liable in tort should be applied in a different context: Should managerial employees be entitled to immunity from suit when their direct employer is the statutory employer of the injured employee? Id. at 147. The rationale for the former rule was that a manager was acting in the place of his employer. Id. When determining whether a managerial employee should be considered a fellow employee, subject to tort liability, or the alter ego of the employer, immune from tort liability, this Court concluded in various decisions that the manager could be held liable in tort when he or she "committed active, direct, individual action directed toward the employee." (Citations and punctuation omitted.) See id. at 147-148. In *Pardue*, the Supreme Court of Georgia looked at this former rule and concluded that it was "persuasive in determining if the supervising employee

---

[2] Before April 1, 1974, employees could file tort claims against fellow employees. Ga. L. 1974, pp. 1143, 1156, § 12; *Pardue*, 263 Ga. at 147, n.1; *Cunningham v. Heard*, 134 Ga. App. 276, 277 (214 SE2d 190) (1985).

10

should be treated as the statutory employer." Id. at 147, n.1. Accordingly, it concluded in the case before it that the vice president and safety officer of a general contractor should be considered the statutory employer of the injured employees of a subcontractor and share in his employer's immunity from suit. Id. at 148. It also stated: "This immunity would not, however, extend to the supervisor when he commits an affirmative act causing or increasing the risk of injury to another employee." Id. It is this last statement upon which Villalobos relies in this case. In his view, Sprowson cannot share in Waste Pro South Carolina's immunity from suit as a statutory employer, because Sprowson was a supervisor who committed an affirmative act that caused or increased his risk of injury. But this argument once again overlooks that the borrowed servant doctrine provides an alternative basis for Sprowson's immunity from tort liability. Sprowson's immunity is not dependent upon whether he should be considered the alter ego of a statutory employer. *Pardue* is therefore distinguishable because it addressed the sole path for the vice president of a general contractor to be found immune from tort liability.

Based upon the particular facts and circumstances of this case and the analysis outlined above, we conclude that the trial court erred by denying Sprowson's motion for summary judgment in his favor.

11

*Judgment reversed. Barnes, P. J., and Mercier, J., concur.*